KRAMER v. DAVIS.

1. VENDOR AND PURCHASER—FORECLOSURE OF LAND CONTRACT—QUIT-
CLAIM DEED OF PORTION OF VENDOR INTEREST—DEFICIENCY.
   A widow's quitclaim deed to the children of her late husband
   operated to transfer to them her 1/3 interest in the vendor's
   interest in land contract by which the deceased had contracted
   to sell the property to defendants' assignors, hence, trial court
   was in error in diminishing by 1/3 the amount due plaintiffs
   on the contract when they sought foreclosure, necessitating a
   corresponding increase in the deficiency as fixed by the court.

2. SAME—ASSIGNMENT—NOTICE OF DEFAULT—INTEREST.
   Plaintiffs, holders of vendors' interest under a land contract which
   did not obligate the vendor to notify assignees of the vendees'
   interest of the default of the second set of assignees, and
   which plaintiffs did not give immediate notice of such default,
   were entitled to interest on the principal sum of the contract
   from the date of default rather than from the time plaintiffs
   notified the first assignees of the default, where each set of
   holders of the vendees' interest had in turn assumed and agreed
   to pay the contract balance, it being the obligation of the first
   assignees to keep posted on the situation.

3. SAME—FORECLOSURE OF LAND CONTRACT—UPSET PRICE—EVIDENCE.
   Finding of trial court in equity suit to foreclose a land contract
   that upset price should be fixed at $5,000 held, supported by
   sufficient evidence.

4. SAME—FORECLOSURE OF LAND CONTRACT—UPSET PRICE—SALES—
STATUTES.
   A trial court in suit to foreclose a land contract may properly
   fix an upset price in advance of the public sale, such being the

REFERENCES FOR POINTS IN HEADNOTES
[1] 55 Am Jur, Vendor and Purchaser §§ 453–460.
[2] 55 Am Jur, Vendor and Purchaser §§ 347–350, 426–428.
[3, 6–8] 55 Am Jur, Vendor and Purchaser §§ 453–461.
[5] 19 Am Jur, Equity § 21.
[9, 10] 14 Am Jur, Costs § 22.

intent of the pertinent statute providing that upset price be fixed (PA 1961, No 236, § 3155).

5. EQUITY—IDLE PROCEEDINGS OR PERFORMANCE.

Idle proceedings or performance should not be required in a suit in equity, where they cannot be shown to be of benefit to either party and a just end is attainable without them.

6. VENDOR AND PURCHASER—EQUITY—FORECLOSURE OF LAND CONTRACT—SALES—UPSET PRICE.

Plaintiffs who seek and are granted foreclosure of land contract in equity may not decline to accept the decree which fixed an upset price or to follow through with the sale ordered to be held (PA 1961, No 236, § 3155).

7. SAME—EQUITY—FORECLOSURE OF LAND CONTRACT—UPSET PRICE—DEFICIENCY.

The fact that trial court in suit in equity to foreclose a land contract fixed an upset price and deficiency based thereon for which vendees' assignées were liable prior to sale that was ordered to be held, rather than following the traditional course of deferring imposition of deficiency until after the sale *held*, not to have injured or prejudiced plaintiffs (PA 1961, No 236, § 3155).

8. SAME—EQUITY—FORECLOSURE OF LAND CONTRACT—UPSET PRICE—STATUTES.

A statutory provision which provides for fixing an upset price in the foreclosure of a land contract in equity and antedates land contract sought to be foreclosed in such proceedings must be read into the contract (CL 1948, § 619.24; PA 1961, No 236, § 3155).

9. SAME—EQUITY—FORECLOSURE OF LAND CONTRACT—COSTS AND EXPENSES.

Claim that defendants in foreclosure proceedings in equity could not be exonerated by the court from payment of costs and expenses of foreclosure is not discussed, where it does not appear from the court's opinion, decree, and order that it did so.

10. COSTS—EQUITY—FORECLOSURE OF LAND CONTRACT—APPEAL AND ERROR—NEITHER SIDE PREVAILING IN FULL.

No costs are allowed on appeal in suit to foreclose a land contract, where decree of foreclosure is vacated and remanded for correction of errors as to amount due plaintiffs and for interest, recomputation of amount of deficiency accordingly, and entry of a new decree and order, since neither side has prevailed in full.

Appeal from Oakland; Miller (Allan C.), J., presiding. Submitted October 8, 1963. (Calendar No. 9, Docket No. 50,009.) Decided November 4, 1963.

Bill by Alex Kramer, Jenny Koppelman, and Henry Krivetsky against Clester Davis, Ruth Davis, George Blair, Evelyn Blair, Lyle F. Baker, and Anna L. Baker to foreclose land contract. Decree for plaintiffs, with minimum price set for sale of property and with limitation set on deficiency. Plaintiffs appeal. Decree vacated and cause remanded for recomputation.

*Joel G. Jacob* (*Milton Roberts* and *Marvin Frankel,* of counsel), for plaintiffs.

*L. C. Burch, Jr.* (*John T. Rogers,* of counsel), for defendants Blair.

DETHMERS, J. This is a suit in equity to foreclose a land contract. Involved in plaintiffs' appeal here are questions relating to their rights as heirs and grantees of an heir of the vendor to deficiency decree against the assignees of vendees who assumed and agreed to pay the contract obligation.

Defendants Davis were vendees under the land contract. They assigned their vendee's interest to defendants Blair, who assumed and agreed to pay the contract balance. The latter, in turn, assigned the vendee's interest to defendants Baker, who assumed and agreed to pay the contract balance. The latter defaulted shortly thereafter.

The vendor died. His estate was probated. By probate court order assigning the residue, the personal estate was assigned to his widow and the real estate 1/3 to his widow and 2/9 to each of his 3 children who are the plaintiffs herein. The widow

then conveyed her interest in the premises involved, by quitclaim deed, to the 3 plaintiffs.

Defendants Davis and Baker have been served by publication and are in default. Only defendants Blair entered an appearance and are contesting.

The court entered a decree finding the amount due on the contract and that defendants Blair are personally liable therefor, providing that, in default of payment, the property be sold at public auction and the proceeds paid to plaintiffs, fixing an upset price of $5,000 for purposes of the sale, under provisions of PA 1961, No 236, § 3155 (CLS 1961, § 600-.3155, Stat Ann § 27A.3155), and limiting defendants Blairs' liability for deficiency to $453.07, providing, further, that, if no bid for at least $5,000 be received at the sale, then the property and all interest of defendants therein shall vest in plaintiffs the same as if they had bid $5,000 and defendants' obligation under the decree be credited accordingly as if such bid had been made by plaintiffs, and that defendants pay plaintiffs the mentioned deficiency as limited in amount in the decree. In fixing the amount due plaintiffs and the limit on the deficiency against defendants Blair the court, as indicated in its opinion, diminished the total amount due on the contract by 1/3 on the theory that by the quitclaim deed plaintiffs had acquired no right to the widow's interest in the contract because it had not, in that deed, been expressly or separately assigned to plaintiffs by the widow. The court also denied plaintiffs interest on purchase price against the Blairs for the 26-month period from defendants Bakers' default in November of 1958 until time plaintiffs notified Blairs in January of 1961 of the default and plaintiffs' intent to hold them for any deficiency on foreclosure sale.

After entry of decree the court entered an order granting defendants Blairs' petition to be permitted

to pay into court the amount fixed by decree as the maximum deficiency allowable against them in full settlement and discharge of Blairs' liability in the cause.  They have so paid it.

Without ever having caused the foreclosure sale to occur, plaintiffs appealed, complaining of error in limiting the liability of Blairs as indicated.

Did the widow's quitclaim deed to plaintiffs operate to assign to them her interest in the vendor's interest in the land contract and, hence, her right to recover payments due on the contract and a deficiency, if any, resulting on foreclosure sale?  The trial court held "no".  Support for this is found in O'Brien v. Evans, 107 Mich 623.  It was held there, as set forth in the syllabus:

"A vendor in a land contract conveyed the land by warranty deed to a third party, excepting the contract from the covenants of warranty.  *Held,* that he did not thereby assign the debt secured by the contract, so as to enable the grantee to maintain an action at law therefor."

This was predicated, in part, on the ground that an intent was not shown on the part of the grantor to assign the claim under the contract so as to enable the grantee to maintain a law action against the vendee for amount due on contract.  This Court said, however (p 626):

"It is possible that equity, upon an investigation of the surrounding circumstances, might be warranted in finding that an assignment of the claim was intended."

The earlier case of *Vos* v. *Dykema,* 26 Mich 399, neither mentioned nor expressly overruled in O'Brien, is authority to the contrary.  As said in 1 of the syllabi in *Vos:*

"An absolute warranty deed from the vendor, operates as an assignment of all his rights in the lands described in the contract, and transfers this remedy to his grantee; such deed is, therefore, competent evidence in a proceeding by the grantee to enforce such remedy."

Cases decided later than *O'Brien,* which made no reference to that case, have cited and followed the decision in *Vos.* See *American Cedar & Lumber Co.* v. *Gustin,* 236 Mich 351, and *Mundy* v. *Mundy,* 296 Mich 578.

"The conveyance of land by a vendor subject to an outstanding contract operates as an assignment to the grantee of the contract between the vendor and the purchaser, and entitles the grantee to the purchase money outstanding although the conveyance is by quitclaim deed, unless there is an agreement to the contrary, or unless purchase-money notes have been given and transferred by the vendor to a third person for value." *Mundy* v. *Mundy,* 296 Mich 578 (syllabus 3).

The quitclaim deed from the widow to plaintiffs did operate to transfer to them her interest in the vendor's interest in the contract. Accordingly, the trial court erred in diminishing by 1/3 the amount due plaintiffs on the contract. This means that the amount of the deficiency as fixed by the court should be increased accordingly.

Was formal notice to the Blairs of the Bakers' default and of plaintiffs' intent to hold vendees and their successive assignees for a deficiency prerequisite to the vendor's right to have interest on the principal sum of the contract continue to run from date of such default? We are cited to no authority in support of such proposition. We think that *Taylor* v. *Groll,* 288 Mich 590, lends support to the contrary view. Blairs urge laches in the 26-month delay by plaintiffs in giving Blairs notice of default

and also the equities arising from the fact that during that period the Bakers abandoned the property and it was vandalized and deteriorated and that upon receipt of notice of default immediately after its occurrence they possibly might have done something to preserve the property and their interest therein. The trial court found that Blair knew that the property was vacant and that his son-in-law, who operates in the same real-estate office with him, was aware of events. Blair testified that he had heard rumors of the default. Blairs assumed and agreed to pay the contract balance. Whether their assignees, the Bakers, kept up the premises and payments should have been a matter of concern to Blairs. It was up to them to keep posted on the situation. The vendor was not obligated to notify them of each default when it occurred in order to keep the interest and Blairs' liability therefor running. The trial court erred in denying plaintiffs interest during the mentioned period. Correction thereof likewise will result in increase of the amount of defiiciency.

Plaintiffs say the court erred in fixing a $5,000 upset price for a foreclosure sale because there was no evidence as to the fair value of the property upon which to make such determination. Examination of the record persuades us that there was sufficient evidence of that character to support the finding. No error occurred in this connection.

Plaintiffs challenge the authority of the trial court, sitting in equity, to fix an upset price for foreclosure sale and to set a limit accordingly on the amount of deficiency for which defendants Blair may be charged, in the absence of the actual holding of such sale, and to decree that, if there is no bid in the sum of at least the upset price of $5,000, then the property shall vest in plaintiffs as if they had bid $5,000, which shall be credited to defendants' obli-

gation as if such bid and sale to plaintiffs had been made, the defendants Blair to pay such deficiency plus interest since date of decree and costs of proceedings and foreclosure sale.

 Plaintiffs do not question the power of the court to fix an upset price as in the mentioned statute provided (CLS 1961, § 600.3155 [Stat Ann § 27A.3155]). The nub of their contention, rather, is that the court may not do so and proceed to fix the deficiency before a sale takes place, and then decree that, if no bid equal to the upset price is made, title to the property shall vest in plaintiffs as if they had made such bid and a sale therefor had been made to them.

We think the language of the statute "the court may fix and determine the minimum price at which the real property covered by the mortgage or land contract may be sold at the sale" discloses a legislative intent to authorize the court to make such determination in advance of the sale. The statute does not say that the court may determine the minimum price at which the real property should have been sold at a sale theretofore held.

 This is a suit in equity. If legal technicalities or hurdles may be overcome to accomplish justice, it should be done. Idle proceedings or performance, which cannot be shown to be of benefit to either party, should not be required in order to accomplish a just end attainable without them. The real issue in this case, as a practical matter, is the amount of deficiency for which defendants Blair may be held. How have plaintiffs been injured or denied equity by the court's fixing the deficiency before the sale takes place rather than after? Assuming the power of the court to set an upset price, what injustice is done plaintiffs by the decretal provision that if no bid equal to that amount is made, then the property will vest in plaintiffs and defendants Blairs' obligation will be credited accordingly, the

same as if plaintiffs had bid and bought the property for that amount at foreclosure sale? Plaintiffs may not play fast and loose with the court. Having invoked the aid of equity and prayed for a foreclosure sale in default of payment of the contract obligation, and having been granted such relief by court decree, plaintiffs may not decline to accept it or to follow through with the sale. Under the decree that sale is still to be held. When it is held, whatever the bid by some third party or by plaintiffs themselves, the consequences will be as favorable for plaintiffs as they would have been had the court waited until after the sale to fix the amount of the deficiency on the basis of a $5,000 upset price. If a bid by another person exceeds that amount, plaintiffs stand to gain. If it be less, plaintiffs will be just where they would have been had the deficiency been fixed after the sale on the $5,000 upset price basis. In this contest over what amount of deficiency payment defendants Blair shall make to plaintiffs, with the trial court's fixing of an upset price being upheld, it can make no difference in the amount of that deficiency due plaintiffs nor affect any of plaintiffs' other rights differently, whether the fixing of the deficiency occurs before or after the sale. Neither are plaintiffs injured by the provision that the property shall vest in them if no bid equal to the upset price is made. They could acquire no more than that by bidding it in at the sale. If a bid less than the upset price is made by some third party, plaintiffs may let it go at that, limited, however, by the upset price as to the amount of deficiency due from defendants Blair. If plaintiffs bid it in or permit the property to vest in them under the decree without making a bid they will have the opportunity, if they wish, to sell it at private sale under conditions perhaps more favorable to them, pricewise, than exist under the distressed

circumstances of a public auction on foreclosure. These facts seem persuasive answers to the posed questions of whether plaintiffs have been injured or prejudiced by the procedural course adopted by the trial court. The answer seems to us to be in the negative.

The court, impatient of a procedural Gordian knot, cut through technicalities to the end it ultimately must have reached had it followed the more traditional practice of awaiting the results of the sale before fixing the deficiency. We do not think we should send it back for procedural obsequies.

To the suggestion that the mentioned statute, as applied here, impairs the obligation of a contract in violation of the Federal and State Constitutions (United States Constitution, art 1, § 10; Michigan Constitution 1908, art 2, § 9), let it be noted that the statute antedates the land contract and must be deemed to be read into it.* Plaintiffs also say that the court could not exonerate defendants from payment of costs and expenses of foreclosure. It does not appear from the court's opinion, decree and order that it did so.

As already observed, the court erred with respect to the questions of plaintiffs' ownership of the entire vendor's interest and of the running of interest on the principal sum due. The decree and order below are vacated and the case remanded for correction of those errors, recomputation of the amount of the deficiency accordingly, and entry of a new decree and order in accord herewith. No costs, neither side having prevailed in full.

CARR, C. J., and KELLY, KAVANAGH, SOURIS, SMITH, and O'HARA, JJ., concurred with DETHMERS, J.

BLACK, J., concurred in result.

---

* See CL 1948, § 619.24 (Stat Ann § 27.1134).—REPORTER.