SENTRY INSURANCE v CLAIMSCO INTERNATIONAL, INC

Docket No. 208758. Submitted June 8, 1999, at Detroit. Decided January 14, 2000, at 9:15 A.M.

Sentry Insurance brought an action in the Oakland Circuit Court against ClaimsCo International, Inc., and others, seeking from ClaimsCo a refund of $46,300 after paying ClaimsCo $46,800 to settle a claim for collision damage to a motor vehicle of a ClaimsCo insured caused by a motor vehicle of a Sentry insured in an accident that occurred in Michigan. Sentry alleged that the payment exceeding the $500 limit on tort liability allowed by the no-fault act, MCL 500.3135(3)(d); MSA 24.13135(3)(d), for collision damage not covered by insurance was made while there was a mistake of fact concerning the location of the accident and that ClaimsCo would be unjustly enriched if the refund was not made. On cross-motions for summary disposition, the court, Robert C. Anderson, J., granted Sentry's motion and denied the defendants' motion. The defendants appealed.

The Court of Appeals *held*:

A mistake of fact is a misunderstanding, misapprehension, error, fault, or ignorance of a material fact, a belief that a certain fact exists when in truth and fact it does not exist. The general rule is that a person who pays money to another by mistake is entitled to recover the amount of the overpayment even if the mistake is due to lack of investigation. The mistake of fact rule in Michigan is based on the principle of restitution, as well as the goal of avoiding unjust enrichment to the payee. In this case, the record indicates that there exists a genuine issue whether there was a mistake of fact concerning the location of the accident. In light of the existence of this issue, the trial court erred in granting summary disposition for Sentry, but did not err in denying summary disposition for the defendants. The case must be remanded for further proceedings.

Affirmed in part, reversed in part, and remanded.

EQUITY — MISTAKE OF FACT — RESTITUTION — UNJUST ENRICHMENT.

A person who overpays another because of a mistake of fact is entitled to recover the amount of overpayment even if the mistake is due to a lack of investigation; the mistake of fact rule in Michigan

is based on the principle of restitution, as well as the goal of avoiding unjust enrichment to the payee.

*Poling, McGaw & Poling, P.C.* (by *Richard B. Poling, Jr.*), for the plaintiff.

*Bowen, Radabaugh, Milton & Brown, P.C.* (by *Thomas R. Bowen* and *Evelyn C. Tombers*), for the defendants.

Before: KELLY, P.J., and JANSEN and WHITE, JJ.

PER CURIAM. Defendants appeal as of right, challenging the circuit court's grant of summary disposition in favor of plaintiff and denial of summary disposition in favor of defendants. We reverse the grant of summary disposition to plaintiff, affirm the denial of defendants' motion for summary disposition, and remand for further proceedings.

This case arises from a motor vehicle accident in Battle Creek, Michigan, involving two tractor-trailer trucks. A truck owned and operated by defendant Quality Services LLC (Quality) was struck by a truck owned and operated by A.M. Castle Co. Defendant ClaimsCo International, Inc., a foreign insurance corporation conducting business in Michigan, insured the truck owned by Quality. Plaintiff Sentry Insurance insured the truck owned by A.M. Castle, a foreign corporation authorized to conduct business in Michigan. The Quality truck was sold for salvage, and defendant ClaimsCo, as the subrogee of defendant Quality, demanded $52,000 from plaintiff to settle the claim. Paul Devlin, plaintiff's claims specialist, and Kenneth Hoxie, defendant ClaimsCo's adjuster, discussed the comparative fault of the drivers involved and negotiated a settlement of $46,800. Plaintiff paid

this amount on December 20, 1996. In March 1997, someone from plaintiff realized that the $46,800 payment was made in error because Michigan's no-fault law limits tort liability for damages to another vehicle to $500. MCL 500.3135(3)(d);   MSA 24.13135(3)(d).[1] Devlin sent a letter to defendant ClaimsCo notifying it of the error, but ClaimsCo refused to refund the payment. Plaintiff then filed the instant action, alleging that the payment was made under a mistake of fact (that Devlin did not realize that the accident occurred in Michigan) and that to allow defendants to retain the payment would result in their unjust enrichment.

Defendants sought summary disposition, asserting that there was no mistake of fact because plaintiff had a police report stating that the accident occurred in Michigan, and that a mistake of law under these circumstances will not justify rescission. Plaintiff opposed defendant's motion, and itself sought summary disposition. Plaintiff's counsel argued at the hearing:

> [T]he problem is that we have a situation where we have two motor vehicles, trucks, involved in an accident in Michigan. In most other states of the nation, there would be an entitlement to the payment of the entire amount of the damage caused to the other vehicle because my client's insured was at fault to the tune of about $46,800 which was

---

[1] MCL 500.3135(3)(d);   MSA 24.13135(3)(d) provides in part:

Notwithstanding any other provision of law, tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle . . . is abolished except as to:

*     *     *

(d) Damages up to $500.00 to motor vehicles, to the extent that damages are not covered by insurance.

paid. However, when it came clearly to light that the accident occurred in Michigan, under MCL 500.3135 . . . , entitles the Plaintiff for proper— collision damage only to recover $500.00. As soon as this was realized, the adjuster immediately sent notice to say you're not entitled to the other $46,300.00.

. . . [W]e're dealing with $46,300 that clearly the defendants aren't entitled to. And we have a disagreement, as pointed out in the case, as to what the law says. And the law goes so far going back over 40 years, it says you can even be negligent but if there is a mistake—which here there was—then they have to give the money back.

The court granted relief to plaintiff, stating:

I do feel in this situation to allow Defendant in this case to retain the $46,300.00, I think, to the Court in my reading of the particular matter, constitutes—would be unjust enrichment and I am going to grant the relief insofar as you're concerned for that $46,300.00 in the matter. I think there's—view it as a mistake of law by both or whatever but I am going to grant that relief.

This Court reviews decisions regarding motions for summary disposition de novo to determine if the moving party was entitled to judgment as a matter of law. *Smith v Globe Life Ins Co*, 460 Mich 446, 454; 597 NW2d 28 (1999). In reviewing a motion for summary disposition brought under MCR 2.116(C)(10), a trial court considers affidavits, pleadings, admissions, and documentary evidence filed in the action or submitted by the parties in the light most favorable to the party opposing the motion. A trial court may grant a motion for summary disposition if the affidavits and other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law. *Id.*

As a preliminary matter, we agree with defendants that the circuit court erred in granting relief based on a mistake of law, rather than fact, where plaintiff never sought relief on that basis, and a mistake of law is usually not a ground for equitable relief. *Burgess v Holloway Const Co*, 123 Mich App 505, 511; 332 NW2d 584 (1983). With respect to the claim based on unjust enrichment, it is premised on the assertion that the settlement resulted from a mistake of fact regarding the location of the accident, and not from informed, although legally misguided, negotiation. We therefore address the operative issue of the existence of a mistake of fact.

Plaintiff bears the burden of proving a mistake of fact by clear and convincing evidence. *Holda v Glick*, 312 Mich 394, 403-404; 20 NW2d 248 (1945). A mistake of fact is "a misunderstanding, misapprehension, error, fault or ignorance of a material fact, a belief that a certain fact exists when in truth and in fact it does not exist." *Montgomery Ward & Co v Williams*, 330 Mich 275, 279; 47 NW2d 607 (1951). We conclude that there was a genuine issue of material fact regarding the existence of a mistake of fact.

Claims Specialist Paul Devlin handled the claim for plaintiff. Devlin worked in Wisconsin, but handled claims from all fifty states and Canada. At the time he was deposed, Devlin had worked for plaintiff for 9½ years, 2½ as a claims specialist. Devlin testified that he specialized in bodily injury claims involving commercial and national accounts. Devlin testified at deposition:

> *Q*: What was your role, generally, with respect to adjusting the claim that was made by ClaimsCo International?

*A:* I received a phone call in December of '96 from the adjustor [sic] from ClaimsCo indicating that he had a total loss claim pending. Subsequent to that, I received the paperwork from ClaimsCo and forwarded it to our inside appraiser who looks over subrogation to check the validity of the claim: it's then returned to me for payment: that's the initial process that we use when we get subrogation claims.

\*　　\*　　\*

I had to obtain authority to make a payment, and it was a very large payment and well above my personal property damage authority . . . . through our national account office and make them aware of the exposure, and in turn, they put our insured on notice, A.M. Castle: obviously, my manager was put on notice, whom I work with.

*Q:* Who's your manager?

*A:* Dan Jurgella, and once the estimate was reviewed and approved by our inside people, ultimate authority was given so the check could be cut by the director of claims, Jim Derkez.

\*　　\*　　\*

*Q:* To your understanding, did Mr. Derkez review the file before authorizing the payment of the check?

*A:* I don't believe so: I could be mistaken, but I don't believe so.

\*　　\*　　\*

*Q:* Did you discuss the resolution of this claim with Mr. Jurgella?

*A:* He was put on notice of the exposure; I don't think we went into any detail about the claim. Property damage claims are worked or evaluated differently than a bodily injury claim because there's a lot less-it's more objective as opposed to a BI claim where it's more subjective; so, yes, there was some discussions [sic]: he certainly knew of the exposure, but it was left to our inside person to evaluate the validity of the claim and make sure the payments that the carrier made were in line.

*Q*: Who was the inside person that investigated the validity of the claim?

*A*: Paul Baltus.

*Q*: What was his position with Sentry?

*A*: He's an inside appraiser.

*Q*: What would his role have been in this?

*A*: Merely to review the paper documentation received by ClaimsCo, review the total loss worksheets that they went through, review the photographs that were provided by ClaimsCo, check with his resources to make sure that the payments they made were in line with the NADA book or Blue Book.

I know, this being a commercial vehicle, he probably has some specialized commercial information he'd probably look through; I'm not part of that; I handle, again, mostly the BI part, bodily injury part of it.

                    *    *    *

He [Baltus] indicated the payments made by ClaimsCo appeared to be in line. Again his investigation was merely the property damage part of it; he's not part of the liability investigation or anything like that.

Regarding his communications with defendant's claims adjuster, Devlin testified that the first indication he had that ClaimsCo was making a claim was a telephone call from a ClaimsCo adjuster on November 21, 1996, in which the adjuster stated that he would send documentation regarding the loss. Devlin testified that by letter dated December 6, 1996, the ClaimsCo adjuster sent him a proof of loss, repair estimates, and truck estimates, which he received on December 9. On December 12, Devlin put his insured, A.M. Castle, on notice because of the size of the claim. Devlin testified that he then sent the file to Baltus, the inside adjuster, and notified his manager and the national account department. Devlin testified that

he obtained the police report, but it is not clear from his testimony when he did so, although it was while the claim was being negotiated. Devlin testified that the inside appraiser gave approval on December 12, that he called Mr. Hoxie on December 12, and that when he and Hoxie spoke on December 18, 1996, they negotiated the claim from $52,000 to $46,000:

> *Q*: When you negotiated the claim from $52,000 down to the $46,800 that was paid, did you have any discussions at all with Mr. Hoxie from ClaimsCo about insurance, anything like that?
>
> *A*: Our discussions would have been centered around the intersection accident and what happened in this specific accident; we had no discussions on what state the accident took place in; it was more of a specific discussion on this accident, but there were no discussions on what state the accident took place in.

> \*     \*     \*

> *Q*: . . . Did you have any specific discussions with Mr. Hoxie about whether or not the vehicle in question had liability insurance within the State of Michigan?
>
> *A*: I don't remember having any specific discussions with him on that, no.
>
> *Q*: In your discussions then, when the amount was negotiated, it was basically to comparative fault of the parties in the accident?
>
> *A*: Yes, it would have been centered around what happened in the accident and not where the accident took place.

> \*     \*     \*

> *Q*: It's claimed in [the complaint], this is paragraph 10, that the payment was made in error under a mistake of fact: do you have any understanding at all as to what the mistake of fact was?

*A*: The mistake, I believe on my part, was not realizing that the loss took place in the State of Michigan where mini-tort applied.

In my current position, I handle all fifty states plus Canada, and, quite honestly, I do not do a lot—I don't handle a lot of property damage: my job centers more around bodily injury, and my Michigan property damage experience is minimal.

*Q*: Just so that I understand your complaint then, the mistake you're talking about in the complaint was a lack of realization that Michigan law may have applied differently in this case?

*A*: I think it was more so that it never crossed my mind that the loss occurred in Michigan while I was negotiating it.

*Q*: You're not claiming in this case that Mr. Hoxie from ClaimsCo misrepresented anything to you, are you?

*A*: The only thing that could have made it clear is, in the subrogation letter, he could have outlined the mini-tort and that I owed him—I believe mini-tort is $500.00; but, other than not putting that into the subrogation letter, that's the only thing that would have made it simpler: he subrogated me for the entire amount

Plaintiff presented sufficient evidence of a mistake of fact to defeat defendants' motion for summary disposition. There was testimony that Devlin failed to realize that the accident occurred in Michigan during the negotiations, and that there were no discussions between Devlin and Hoxie during the negotiations regarding the state in which the accident occurred. Furthermore, during the nine days that Devlin had to investigate the claim, he was required to provide the file to the appraiser and the director of claims, which meant that he was unable to review the file on those occasions himself to determine liability issues. A reasonable factfinder could conclude that Devlin was acting under a mistake of fact regarding the location

of the accident when he agreed to settle for an amount that was so much in excess of the amount to which defendant was entitled.

This Court in *Kern v City of Flint*, 125 Mich App 24, 28; 335 NW2d 708 (1983), noted that the general rule is "where one pays money to another by mistake, that person is entitled to recover the amount of the overpayment even if the mistake is due to lack of investigation." See also *Montgomery Ward & Co*, *supra* at 284. The mistake of fact rule in Michigan is based on the principle of restitution, as well as the goal of avoiding unjust enrichment to the payee. *Hofmann v Auto Club Ins Ass'n*, 162 Mich App 424; 413 NW2d 455 (1987). Under MCL 500.3135(3)(d); MSA 24.13135(3)(d), defendant was entitled to $500 but was paid $46,800. The circuit court properly denied defendants' motion.

On the other hand, the conclusion that Devlin made a true mistake of fact is not compelled. Viewing the evidence submitted with the motions in the light most favorable to defendants, there was a genuine issue whether there was a mistake of fact. There was evidence that Devlin had the police report when the loss was negotiated. A trier of fact could reject Devlin's assertion that he did not understand that the accident occurred in Michigan, and instead conclude that he was aware of the accident location, but did not understand the Michigan no-fault laws. We therefore conclude that the circuit court erred in granting summary disposition to plaintiff.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.