EASTBROOK HOMES, INC v DEPARTMENT OF TREASURY

Docket No. 299612. Submitted November 9, 2011, at Lansing. Decided
     April 24, 2012, at 9:10 a.m. Leave to appeal denied, 493 Mich 882.
     The Department of Treasury assessed Eastbrook Homes, Inc., for
         taxes, penalties, and interest due under the State Real Estate
         Transfer Tax Act (SRETTA), MCL 207.523 (1)(b), with regard to
         certain quitclaim deeds on which Eastbrook was the grantor. As
         part of its business of constructing houses and condominium units
         for people who had bought a lot or unit from a developer,
         Eastbrook would enter into a contract with the buyers for con-
         structing the home or condominium unit and, as security for the
         contract price of the construction, require the buyers to quitclaim
         their real property to Eastbrook. Once the construction was
         complete and Eastbrook was paid the contract price, Eastbrook
         would quitclaim the property back to the buyers. Eastbrook had
         not paid taxes imposed under the SRETTA that were due when the
         quitclaim deeds to the buyers were recorded under the belief that
         the quitclaim deeds were exempt from the tax under MCL
         207.526(d) as written instruments given to discharge a security
         interest. Eastbrook contested the assessments for the tax periods
         of 2003 through 2006 and requested an informal conference. After
         the conference, a hearing referee recommended that the assess-
         ments be upheld. The Department of Treasury thereafter issued a
         final decision and order affirming the assessments. Eastbrook
         appealed in the Tax Tribunal, which granted Eastbrook equitable
         relief by construing each buyer's quitclaim deed to Eastbrook as
         only an equitable mortgage and each of the quitclaim deeds from
         Eastbrook back to the buyers as only a discharge of a security
         interest exempt from the SRETTA tax under MCL 207.526(d). The
         Department of Treasury appealed the judgment and order cancel-
         ling the assessments.

         The Court of Appeals *held*:

         1. The Tax Tribunal committed an error of law and relied on
     the wrong legal principles when it granted Eastbrook equitable
     relief. The quitclaim deeds given to Eastbrook transferred to
     Eastbrook all the title and property interests attendant to owner-
     ship of the real property that were held by the buyers. The

quitclaim deeds given to the buyers by Eastbrook transferred back to the buyers all the title and property interests that they had previously held. Because the deeds conveyed "any interest in property, for consideration" they were subject to the SRETTA tax imposed by MCL 207.523(1)(b). The deeds given by Eastbrook did more than release its security, they transferred all title and interests in the property back to the buyers and were not exempt under MCL 207.526(d) as a written instrument given to discharge a security interest.

2. Tax exemption statutes are to be strictly construed in favor of the taxing unit. Equity may not be invoked to avoid the dictates of a statute in the absence of fraud, accident, or mistake. Eastbrook's intent to structure the quitclaim transactions as tax-exempt transactions and its belief regarding the import of the transactions are insufficient grounds to grant it equitable relief to reform the deeds so that they fall within the purview of the exemption provided in MCL 207.526(d). There was no fraud, accident, or mistake that prevented the parties from crafting instruments that solely created or discharged a security interest so as to come within the exception provided in MCL 207.526(d). Eastbrook fully intended that the buyers quitclaim all their title and interests to it before it would begin construction and fully intended that all title and interests be transferred back to the buyers following completion of construction and receipt of the contract price. The quitclaim deeds contained no exceptions or reservations.

Reversed.

1. TAXATION — EXEMPTIONS FROM TAXATION — STATUTES — CONSTRUCTION OF STATUTES.

Tax exemption statutes are to be strictly construed in favor of the taxing unit; an exemption cannot be made out by inference or implication but must be found to have been intended by the Legislature beyond a reasonable doubt.

2. EQUITY — STATUTES.

Equity may not be invoked to avoid the dictates of a statute in the absence of fraud, accident, or mistake.

3. DEEDS — QUITCLAIM DEEDS.

A quitclaim deed conveys to the grantee the grantor's complete interest or claim in certain real property unless some interest is expressly excepted or reserved.

*McClelland & Anderson, L.L.P.* (by *Gregory L. Mc-Clelland* and *Melissa A. Hagen*), for Eastbrook Homes, Inc.

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, and *Michael R. Bell*, Assistant Attorney General, for the Department of Treasury.

Before: TALBOT, P.J., and FITZGERALD and MARKEY, JJ.

PER CURIAM. Respondent, the Michigan Department of Treasury (Treasury), appeals by right the July 27, 2010, final judgment of the Michigan Tax Tribunal cancelling Treasury's assessments against Eastbrook Homes, Inc. (petitioner), for taxes, penalties, and interest due under the State Real Estate Transfer Tax Act (SRETTA), MCL 207.521 *et seq.*, in the amount of $1,039,854.87 for the tax periods of 2003 through 2006. Petitioner argued in the Tax Tribunal that the real estate transfers at issue were exempt from transfer tax under MCL 207.526(d). After a one-day hearing, briefs, and arguments of the parties, the tribunal issued its final opinion and judgment that MCL 207.526(d) exempted the transfers from taxation and cancelled Treasury's assessments. Because we conclude that the Tax Tribunal erred as a matter of law, we reverse.

### I. FACTS AND PROCEEDINGS

Petitioner is a residential building company that constructs and sells new homes. Petitioner builds both speculative and custom-built homes. In the case of a speculative home, petitioner buys a lot or unit from a developer and then builds a house on it with no specific buyer in mind. After the speculative home is complete, petitioner puts the home up for sale on the market. When petitioner sells a speculative home and conveys

the property by deed to the buyer, it pays a transfer tax on the value of the land and the value of the home as required under SRETTA, MCL 207.523.

A custom-built home is a home built for a specific, i.e., predetermined, buyer. In the case of a custom-built home, the buyer purchases the unit or lot from a developer and then hires petitioner to construct a house. In the transactions at dispute in this case, each buyer purchased a lot from developer Eastbrook Development Company, Inc. (EDC). EDC would then convey the property to the buyer by warranty deed, and EDC would pay the transfer tax on the value of the undeveloped property at that the time of the conveyance. At the same time the buyer purchased the unit or lot from EDC, the buyer would also contract with petitioner to construct a house or condominium unit. The purchase agreement between the buyer and EDC includes only the value of the real property without the value of the later construction. Similarly, the contract between the buyer and petitioner includes only the cost of construction, not the value of the underlying real property.

As security for the contract price between petitioner and the buyer, petitioner would require the buyer to quitclaim the property to petitioner. Once construction was complete and petitioner was paid the contract price, petitioner would quitclaim the property back to the buyer. Because the quitclaim deeds were made for the purposes of creating a security interest in the property or discharging a security interest, petitioner contends that the quitclaim deeds were exempt from transfer tax under SRETTA pursuant to MCL 207.526(d). Treasury contends that petitioner acted in a coordinated manner with EDC to sell improved property to its buyers without paying the transfer tax on the improved value of the property. In Treasury's view, the

warranty deeds between EDC and the buyers were unnecessary and were simply being used as a tax-avoidance device. Consequently, Treasury asserts that the quitclaim deeds from petitioner to the buyers are subject to the transfer tax under SRETTA.

Treasury audited petitioner for the years 2003-2006 and, as a result of the audit, assessed petitioner tax deficiencies with interest and penalties totaling $1,039,854.87. Petitioner contested the assessments and requested an informal conference, which was held on May 7, 2008. The hearing referee recommended that the assessments be upheld. Treasury issued a final decision and order of determination affirming the assessments on February 3, 2009. Petitioner appealed the decision in the Tax Tribunal on March 2, 2009, arguing that the quitclaim deeds at issue are exempt from SRETTA because they were made for the purpose of discharging a security interest in the property.

After discovery, a hearing was conducted on April 15, 2000, before a Tax Tribunal hearing officer. At the hearing, the parties stipulated with regard to the admission of four exhibits, which were "typical or prototype documents for all the transactions subject to the various assessments." After the exhibits were admitted, Michael McGraw, Chief Executive Officer of petitioner, testified regarding the transactions. McGraw was the only witness. On the basis of the hearing, the Tax Tribunal made the following findings of fact:

> 1. Petitioner (i.e., the Building Company) is in the business of residential construction.
>
> 2. The Development Company (i.e., Eastbrook Development Company, Inc.) is in the business of taking raw unimproved land and developing it into divisible parcels of property.

3. The Building Company and the Development Company are separate and distinct entities.

4. Mr. McGraw, as an individual owner, has interests in both entities and a legitimate business purpose, other than avoiding transfer tax, to maintain the Building Company and Development Company as separate entities including but not limited to the provisions set forth in the Condominium Act, MCL 559.101 *et seq.*, and Land Division Act, MCL 560.101, *et seq.*, and tort liability.

5. Pursuant to Paragraph 21 of the Building Contract, Petitioner and the Buyers expressly intended to use the Buyer's quit claim deed for a specified parcel of property, as security for payment of improvements made.

6. During the course of construction, Petitioner has a legitimate business interest to maintain physical possession of the property including but not limited to the lack of a certificate of occupancy (see Paragraph 13 and 14 of the Building Contract), tort liability, and expeditious completion of the project.

7. The parties acted consistent with their intentions set forth in the transaction documents and Building Contract; Petitioner did not act as though he possessed fee simple title in the property and the Buyers still retained an interest in the property by paying the property taxes, and making additional decisions with regard to change orders and addendums made during the course of construction.

8. As expressed in the Building Contract, upon completion of the home Petitioner "would release its security and quit claim title back to the Buyer."

9. The Buyers' quit claim deeds and Petitioner's quit claim deeds both indicate on their face the parties' intention to use the deed as a security; the deeds corroborated the parties intentions set forth in the transaction documents contained in Petitioner's exhibits.

10. The Buyers' quit claim deeds are found to be an effective method of making certain that the Builder is paid in full upon completion of construction of a home, and

provides a strong form of security. [Final Opinion and Judgment (MTT Docket No. 359471, July 27, 2010), pp 14-15.]

The Tax Tribunal invoked the doctrine of equitable mortgages to grant petitioner relief, writing with respect to its conclusions of law as follows:

The quit claim deeds from Petitioner to its respective customers are clearly deeds or instruments of conveyance of property or any interest in property, which are subject to the tax imposed under the SRETTA, *but for the fact that the quit claim deeds were given as security or an assignment or discharge [of] the security interest and thus exempt under § 6 of the SRETTA[.]*

It is apparent from clear unambiguous language used within the documents in Petitioner's Exhibits that the parties intended the conveyance of property interests, by way of quit claim deeds from the Buyers to Petitioner and from Petitioner to the Buyers, were to be treated as creating a security interest in the properties. More specifically, Petitioner and the Buyers expressly intended in their respective Building Contracts that the Buyers' quit claim deeds be given to Petitioner as "security during construction." Furthermore, Buyers' quit claim deeds expressly corroborate the parties' intentions by stating "This transfer is made for security purposes" on the face of the deed, and by specifically identifying the property used to secure the debt. Therefore, the Tribunal finds that the Buyers' quit claim deeds to Petitioner created a security interest (i.e., an equitable mortgage) on the Buyers' respective parcel of property.

* * *

The statute is clear and unambiguous that written instruments that transfer property given as security and the assignment or discharge of the security interest are exempt from SRETT[A]. MCL [207.526(d)]. The statute does *not* require the security interest be created by way of mortgage in order to be exempt. If the Legislature would

wish to limit the exemption contained in § 6 of the SRETTA to mortgages it is free to do so.

Notwithstanding the above, Petitioner's relationship with the Buyers, as their builder and financier, further supports the conclusion that Buyers' quit claim deeds served as an equitable mortgage. Accordingly, Petitioner's quit claim deeds back to the Buyers are a release of said security. Therefore, Petitioner's quit claim deeds to the Buyers are exempt from State transfer tax pursuant to MCL 207.526(d). [Final Opinion and Judgment (MTT Docket No. 359471, July 27, 2010), pp 15-17.]

On the basis of the foregoing findings of fact and conclusions of law, the Tax Tribunal issued its judgment cancelling Treasury's assessments. Treasury appeals by right.

## II. STANDARD OF REVIEW

"Absent an allegation of fraud, this Court's review of a tax tribunal decision is limited to determining whether the tribunal committed an error of law or applied the wrong legal principles." *AERC of Mich, LLC v Grand Rapids*, 266 Mich App 717, 722; 702 NW2d 692 (2005); Const 1963, art 6, § 28. The Tax Tribunal's findings of facts are final if they are supported by competent and substantial evidence. *Mt Pleasant v State Tax Comm*, 477 Mich 50, 53; 729 NW2d 833 (2007). But the interpretation of a statute is a question of law we review de novo. *Id.*; *AERC of Mich*, 266 Mich App at 722.

## III. PERTINENT STATUTORY PROVISIONS

Treasury argues that petitioner's quitclaim deeds back to buyers after completing construction of a home or condominium unit, and the buyers payment for the

added value pursuant to the building contract, is taxable under § 3 of SRETTA, which provides, in part:

(1) There is imposed, in addition to all other taxes, a tax upon the following written instruments executed within this state when the instrument is recorded:

(a) Contracts for the sale or exchange of property or any interest in the property or any combination of sales or exchanges or any assignment or transfer of property or any interest in the property.

(b) Deeds or instruments of conveyance of property or any interest in property, for consideration.

\* \* \*

(2) The person who is the seller or grantor of the property is liable for the tax imposed under this act. [MCL 207.523.]

Petitioner contends that the quitclaim deeds of petitioner to the buyers are exempt from taxation under § 6 of SRETTA, which provides, in pertinent part:

The following written instruments and transfers of property are exempt from the tax imposed by this act:

\* \* \*

(d) A written instrument given as security or an assignment or discharge of the security interest. [MCL 207.526.]

### IV. ANALYSIS

We conclude that the Tax Tribunal committed an error of law and relied on the wrong legal principles by granting petitioner the equitable relief of construing each buyer's quitclaim deed as only an equitable mortgage and also each of petitioner's quitclaim deeds as only a discharge of a security interest. Although petitioner and its buyers intended to create and discharge

"strong security," their quitclaim deeds and written contracts establish that they also intended to and did transfer back and forth all property interests attendant to title or ownership of real property. Because petitioner's quitclaim deeds conveyed "any interest in property, for consideration," MCL 207.523(1)(b), and because the Tax Tribunal erred as a matter of law by construing the buyers' quitclaim deeds as only equitable mortgages and petitioner's quitclaim deeds as only their discharge, the Tax Tribunal erred as a matter of law by cancelling Treasury's tax assessment pursuant to MCL 207.526(d).

At the outset, we note that Treasury's primary argument is less than compelling. Treasury argues that petitioner and EDC acted together as a single unit to sell improved property to buyers, specifically structuring the transactions in a manner to avoid paying the transfer tax on the improved value of the land. Treasury argues that other and better methods existed for petitioner to secure its interests and that the transactions at issue were structured as a tax-avoidance device. Because the quitclaim deeds were used as a tax-avoidance device, Treasury asserts, they are not exempt under MCL 207.526(d). Treasury argues that Michigan courts look to the substance of the transaction when the transaction is structured in a tax-dependant manner and is thus a tax-avoidance device. See *Charles E Austin, Inc v Secretary of State*, 321 Mich 426, 434-435; 32 NW2d 694 (1948), and *Mourad Bros, Inc v Dep't of Treasury*, 171 Mich App 792, 797; 431 NW2d 98 (1988).

Treasury's argument is unpersuasive. "The legal right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them, by means which the law permits, cannot be doubted." *Gregory v Helvering*, 293 US 465, 469; 55 S Ct 266; 79

L Ed 596 (1935); see also *Stone v Stone*, 319 Mich 194, 199; 29 NW2d 271 (1947) ("A taxpayer has the legal right to attempt, by lawful means, to minimize taxes . . . ."). Further, this Court has held that when a multiple-party transaction has economic substance, which is required or encouraged by business or regulatory considerations, and not solely for tax avoidance, the government should honor the parties' allocation of rights and duties. *Mourad Bros*, 171 Mich App at 797, citing *Stratton-Cheeseman Mgt Co v Dep't of Treasury*, 159 Mich App 719, 725; 407 NW2d 398 (1987), and *Connors & Mack Hamburgers, Inc v Dep't of Treasury*, 129 Mich App 627, 629-630; 341 NW2d 846 (1983). Here, the Tax Tribunal determined that petitioner and EDC were separate and distinct entities and that determination is supported by competent and substantial evidence. Other than arguing that better methods existed to accomplish the intended purpose of the transactions, Treasury offers no basis to dispute the tribunal's finding of fact that there exists "legitimate business purpose[s], other than avoiding transfer tax, to maintain [petitioner] and [EDC] as separate entities including but not limited to the provisions set forth in the Condominium Act, MCL 559.101 *et seq.*, and Land Division Act, MCL 560.101, *et seq.*, and tort liability." Because the transactions at issue have economic substance beyond solely tax avoidance, they should be given full effect.

But Treasury also cites a general legal principle regarding the construction of tax exemptions that is very pertinent to the resolution of this case. Specifically, because an " '[e]xemption from taxation effects the unequal removal of the burden generally placed on all landowners to share in the support of local government [and] [s]ince exemption is the antithesis of tax equality, exemption statutes are to be strictly construed in favor

of the taxing unit'." *Ladies Literary Club v Grand Rapids*, 409 Mich 748, 753; 298 NW2d 422 (1980) (citations omitted). As more fully explained by Justice COOLEY:

> "An intention on the part of the [L]egislature to grant an exemption from the taxing power of the state will never be implied from language which will admit of any other reasonable construction. Such an intention must be expressed in clear and unmistakable terms, or must appear by necessary implication from the language used, for it is a well-settled principle that, when a special privilege or exemption is claimed under a statute, charter or act of incorporation, it is to be construed strictly against the property owner and in favor of the public. This principle applies with peculiar force to a claim of exemption from taxation. Exemptions are never presumed, the burden is on a claimant to establish clearly his right to exemption, and an alleged grant of exemption will be strictly construed and cannot be made out by inference or implication but must be beyond reasonable doubt." [*Id.* at 754, quoting 2 Cooley, Taxation (4th ed), § 672, pp 1403-1404.]

Another legal principle of particular importance to the resolution of this case relates to the Tax Tribunal's using equity to grant petitioner relief from the plain terms of MCL 207.523(1)(b). Equity may not be invoked—in the absence of fraud, accident, or mistake—to avoid the dictates of a statute. *Stokes v Millen Roofing Co*, 466 Mich 660, 671-672; 649 NW2d 371 (2002); *Freeman v Wozniak*, 241 Mich App 633, 637-638; 617 NW2d 46 (2000). Consequently, petitioner's intent to structure the quitclaim transactions at issue as tax exempt and its belief regarding the legal import of the transactions are insufficient grounds to grant petitioner equitable relief to reform the quitclaim deeds at issue so that they fall within the purview of MCL 207.526(d). See *Burkhardt v Bailey*, 260 Mich App

636, 659; 680 NW2d 453 (2004); *Sentry Ins v Claimsco Int'l, Inc*, 239 Mich App 443, 447; 608 NW2d 519 (2000).

When they are recorded, MCL 207.523(1)(b) imposes a tax on "[d]eeds or instruments of conveyance of property or any interest in property, for consideration." By these plain terms, a deed or other instrument by which *any* interest in property is conveyed for consideration is subject to the tax when the deed or instrument of conveyance is recorded. The phrase "any interest" is best analyzed using the familiar analogy that real property consists of various rights with each right represented as a stick. A person having all possible rights incident to ownership of a parcel of property has the entire bundle of sticks or a fee simple title to the property. *Adams v Cleveland-Cliffs Iron Co*, 237 Mich App 51, 57 & n 6; 602 NW2d 215 (1999). Important rights flowing from property ownership include the right to exclusive possession, the right to personal use and enjoyment, the right to manage its use by others, and the right to income derived from the property. *Id.* at 57-58 & n 7. Indeed, "title," is defined in Black's Law Dictionary (9th ed), as "[t]he union of all elements (as ownership, possession, and custody) constituting the legal right to control and dispose of property . . . ."

Each of the real estate transactions at issue was preceded by EDC's conveying a warranty deed of an unimproved lot or condominium unit to the buyer who contracted with petitioner for the construction of a home or residential condominium unit. A warranty deed conveys the entire bundle of rights to the property from the grantor to the grantee in fee simple; it also includes the grantor's covenant that the grantor has good, marketable title and guarantees to the grantee the right of quiet possession. *Allen v Hazen*, 26 Mich 142, 146 (1872); MCL 565.151; 13 Michigan Law &

Practice (2d ed), Deeds, § 3, p 246. The day after receiving EDC's warranty deed, each buyer, by quitclaim deed, conveyed *all* his or her rights to the particular lot or condominium unit to petitioner. "A quitclaim deed is, by definition, '[a] deed that conveys a grantor's *complete interest or claim in certain real property* but that neither warrants nor professes that the title is valid.' " *Dep't of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 378-379; 699 NW2d 272 (2005), quoting Black's Law Dictionary (7th ed). See also MCL 565.3 ("A deed of quit claim and release, of the form in common use, shall be sufficient to pass all the estate which the grantor could lawfully convey by a deed of bargain and sale."), and *Roddy v Roddy*, 342 Mich 66, 69; 68 NW2d 762 (1955) ("It is settled law in this State that a quitclaim deed transfers any interest the grantor may have in the lands, whatever its nature.").

Although each buyer's quitclaim deed to petitioner contains a statement that "[t]his transfer is made for security purposes" and that "[t]his transfer is exempt from transfer tax pursuant to MCLA 207.505(d)[1] and 207.526(d)," there is no language in the quitclaim deed reserving to the buyer-grantor any of the property rights conveyed by EDC's warranty deed the preceding day. "A quitclaim deed is generally construed as conveying all the grantor's interest in the described property unless some interest is expressly excepted or reserved." *Thomas v Steuernol*, 185 Mich App 148, 154-155; 460 NW2d 577 (1990). Additionally, the contract between the buyers and petitioner and their actions during the building phase confirm that the buyers' quitclaim deeds conveyed to petitioner the important property interests

---

[1] MCL 207.505(d) provides an exemption with language nearly identical to MCL 207.526(d) applicable to the tax imposed under the county real estate transfer tax act, MCL 207.501 *et seq.*

of possession and control of the pertinent lot or condominium unit. Consequently, while all the buyers' quitclaim deeds to petitioner provided strong security to petitioner regarding its construction contract, they also transferred all of the buyers' property rights in the lot or condominium unit, received through the prior warranty deed, to petitioner.[2]

Pursuant to the construction contract between the buyer and petitioner, after petitioner completed constructing the buyer's home or condominium unit and the buyer paid the contract price, petitioner would surrender possession of the home or condominium unit to the buyer. A closing would also occur where petitioner would "release its security *and* quit claim *title* back to the Buyer . . . ." (Emphasis added.) Although petitioner's quitclaim deeds state that they are exempt from the county transfer tax, MCL 207.505(d), and the state transfer tax, MCL 207.526(d), they do not limit the conveyance to only a "discharge of [a] security interest." *Id.* The operative words of transfer in the deeds are "quit claim," which, as noted already, transfer all of the grantor's rights in the property to the grantee. *Roddy*, 342 Mich at 69; *Thomas*, 185 Mich App at 154-155. Thus, petitioner's quitclaim deeds back to the buyer do more than "release its security"—they also transfer "title" back to the buyer. Here, "title" would include all property interests in the property, such as possession and the legal right to control and dispose of property that the buyer had previously quitclaimed to petitioner. Because petitioner's quitclaim deeds transferred "any interest in property"—all the property

---

[2] The quitclaim deeds clearly provide strong security because in the event of a buyer's default, petitioner would not need to foreclose a mortgage or a construction lien since the buyer would already have transferred all of his or her property rights in the lot or condominium unit to petitioner.

rights the buyers had previously transferred to petitioner—"for consideration"—the contract price for the improvements made while in petitioner's possession and control, petitioner's quitclaim deeds are plainly taxable under MCL 207.523(1)(b), unless specifically exempted by MCL 207.526(d).

MCL 207.526(d), as a tax-exemption statute, must be strictly construed for the reasons discussed by Justice COOLEY in his treatise and quoted in *Ladies Literary Club*, 409 Mich at 754. MCL 207.526(d), pertinent to petitioner's quitclaim deeds, only exempts a "discharge of [a] security interest" previously given. The exemption can apply in this instance only if the pertinent portion of MCL 207.526(d) is interpreted to read: a "discharge of [a] security interest" previously given as part of a deed or instrument also conveying any other interest in the property. But such an expansion of the exemption beyond its express wording is not permitted. *Ladies Literary Club*, 409 Mich at 753-754. Consequently, the Tax Tribunal correctly applied MCL 207.526(d) to exempt petitioner's quitclaim deeds from taxation under MCL 207.523(1)(b) only if it properly invoked equity to reform the buyers' quitclaim deeds to convey only an equitable mortgage and also correctly reformed petitioner's quitclaim deeds to only discharge an equitable mortgage. See *Fletcher v Morlock*, 251 Mich 96, 98-99; 231 NW 59 (1930) (where a deed is construed to be an equitable mortgage, a grantee's reconveyance to the grantor is construed to be a discharge of the equitable mortgage).

Michigan has long recognized equitable mortgages. In *Abbott v Godfroy's Heirs*, 1 Mich 178, 181 (1849), the Court held that an equitable mortgage arose from the parties' intent to create by a written agreement a lien on real estate for the payment of a debt, but the written

agreement was legally defective. Thus, courts may reform a defective instrument to reflect the parties' intent. As stated in 1 Cameron, Michigan Real Property Law (3d ed), Mortgages, § 18.5, pp 681-682:

> A court of equity may impose and foreclose an equitable mortgage on a parcel of real property when no valid mortgage exists but some sort of lien is required by the facts and circumstances of the parties' relationship. Generally an equitable mortgage will be imposed if it is shown that there was an intention to place a lien on the real estate or a promise that the real estate would be used as security but for some reason the intended purpose was not accomplished. . . . For example, a defective mortgage may have been executed.

Additionally, an equitable mortgage may arise in other circumstances, for example, where a deed purports to convey a fee simple estate, but the parties intended only a mortgage. *Id.*, § 18.6, pp 683-684; see also *Burkhardt*, 260 Mich App at 659 ("An equitable mortgage places the substance of the parties' intent over form."), and *Townsend v Chase Manhattan Mtg Corp*, 254 Mich App 133, 138; 657 NW2d 741 (2002). As its name implies, equitable principles are the heart of the doctrine: "The whole doctrine of equitable mortgages is founded upon the ancient, cardinal maxim of equity which regards that as done which was agreed to be done . . . ." *Schram v Burt*, 111 F2d 557, 562 (CA 6, 1940). Even without a written contract, " 'from the relations of the parties, equity will declare a lien out of considerations of right and justice, based upon those maxims which lie at the foundation of equity jurisprudence.' " *Senters v Ottawa Savings Bank, FSB*, 443 Mich 45, 53; 503 NW2d 639 (1993), quoting *Kelly v Kelly*, 54 Mich 30, 47; 19 NW 580 (1884).

Further, "[e]quity will create a lien only in those cases where the party entitled thereto has been pre-

vented by fraud, accident, or mistake from securing that to which he was equitably entitled." *Cheff v Haan*, 269 Mich 593, 598; 257 NW 894 (1934). Thus, merely advancing money to improve real property with an understanding a lien would be given will not create an equitable lien. *Id.* Moreover, "[a] party that has an adequate remedy at law is not entitled to an equitable lien." *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 284; 761 NW2d 761 (2008).

In the present case, there is no basis in equity to reform the parties' quitclaim deeds. There was no fraud, accident, or mistake that prevented the parties to the real estate transactions at issue from crafting instruments that solely created or discharged a security interest so as to come within the exemption of MCL 207.526(d). As noted already, petitioner's mistaken belief that the quitclaim deeds were not taxable provided no basis to invoke equitable relief. *Burkhardt*, 260 Mich App at 659; *Sentry Ins*, 239 Mich App at 447. Nor is invoking the intent of petitioner (and its buyers) a sufficient basis to equitably reform the quitclaim deeds at issue. Petitioner fully intended and required by contract that buyers quitclaim title, including the rights of possession and control of the pertinent lot or condominium unit, to petitioner before it began constructing a home or condominium unit on the lot. Further, petitioner fully intended by its quitclaim deeds at issue to transfer title, including the rights of possession and control, back to the buyer upon the buyer's payment of the consideration after construction of either the residence or condominium. Consequently, there is no basis in equity for the Tax Tribunal to reform the buyers' quitclaim deeds to equitable mortgages or to conclude that petitioner's quitclaim deeds were issued solely as "discharge[s] of the security interest." MCL 207.526(d).

This is so even if the buyers' quitclaim deeds could be considered "written instrument[s] given as security . . . ." *Id.*

In conclusion, whether petitioner and EDC are separate entities, whether the parties intended to create security interests, whether there are legitimate business reasons to structure the transactions the way they were, and whether petitioner believed the transactions were tax exempt, we conclude that petitioner's quitclaim deeds were still taxable because they conveyed "any interest" in property for consideration, MCL 207.523(1)(b), beyond just a "discharge of [a] security interest." MCL 207.526(d). Thus, the value added to the lot or condominium unit by petitioner's construction of a home on a lot or a condo within the unit is taxable. MCL 207.523(1)(b); MCL 207.532. The Tax Tribunal erred as a matter of law by granting petitioner equitable relief and cancelling Treasury's assessments.

We reverse.

TALBOT, P.J., and FITZGERALD and MARKEY, JJ., concurred.