*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SOHO LAND DEVELOPMENT, INC,

Plaintiff-Appellant,

v

OAKLAND COUNTY TREASURER,

Defendant-Appellee.

UNPUBLISHED
December 16, 2024
2:01 PM

No. 368567
Oakland Circuit Court
LC No. 22-197704-CK

Before: RIORDAN, P.J., and BOONSTRA and YATES, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting defendant's motion for summary disposition. We affirm in part, reverse in part, and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff, a land developer, filed suit against defendant in 2015, alleging that defendant had wrongfully foreclosed on a hotel owned by plaintiff. In 2016, the parties settled that case. Specifically, in August of 2016, the parties signed a Memorandum of Settlement (the Memorandum) which provided, in relevant part:

> 1. Defendant will endeavor to acquire the following properties and convey them, as is, without warranty, to Plaintiff. Plaintiff understands that each of the properties is a tax foreclosed property that did not sell at the July auction:
>
> * * *
>
> k. 20 Vacant Condominium Units on Lone Oak Circle, Holly.

Before executing the Memorandum, plaintiff's president contacted defendant seeking additional information about the ownership of the 20 vacant condominium lots in Holly (the vacant lots). Counsel for defendant responded by email to plaintiff's counsel, stating in relevant part that "we have confirmed that the Treasurer's office is the current title holder." The parties executed an Amended Memorandum of Settlement (the Amended Memorandum) in November 2016. The

-1-

Amended Memorandum continued to provide, in relevant part, that defendant would "endeavor to acquire" and convey to plaintiff "as is, without warranty," property that included "20 Vacant Condominium Units on Lone Oak Circle, Holly." Also, the Amended Memorandum added that defendant would endeavor to acquire and convey to plaintiff additional properties, including a residential property located at 1827 East Pearl in Hazel Park (the Hazel Park Property). The Amended Memorandum provided that plaintiff understood that the properties listed were the subject of tax foreclosure and did not sell at a July or October treasurer's auction. The Amended Memorandum also provided in relevant part that plaintiff had the right to inspect the properties, that the properties would be conveyed "as soon as practicable but no later than December 16, 2016," and that "Defendant shall maintain the properties . . . in the manner in which Defendant has maintained the properties since acquiring title until conveyed to Plaintiff." The Amended Memorandum stated that its terms would be incorporated into a formal release and settlement agreement.

On December 9, 2016, the parties executed a Settlement and Release Agreement (the Settlement Agreement), which provided that defendant "conveys" certain properties, including the "20 Vacant Condominium Units on Lone Oak Circle, Holly" and the Hazel Park Property, "as is, without warranty" to plaintiff. It also recited that "the contingencies in the Amended Memorandum of Settlement have been satisfied." The Settlement Agreement contains the following provisions relevant to this appeal:

2. **Conveyance of Real Properties.**

    A.    Defendant conveys the following properties, as is, without warranty, to Plaintiff pursuant to a treasurer's deed. Plaintiff understands that each of the properties is a tax-foreclosed property that did not sell at the July 2016 tax foreclosure auction:

* * *

    vi. 20 Vacant Condominium Lots on Lone Oak Circle, Holly, Parcel ID I 01-01-201-017 through -036

    B.    Defendant also conveys the following properties, as is, without warranty, to Plaintiff. Plaintiff understands that each of the properties is a tax-foreclosed property that did not sell at either the July or October 2016 tax foreclosure auctions:

* * *

    v. 1827 E. Pearl, Hazel Park, parcel ID 28-25-36-234-014

    C.    <u>Treasurer's Deed; Disclaimer of Warranties, As is Condition.</u> The above properties are conveyed to Plaintiff via the treasurer's deeds attached as Exhibit A ("Treasurer's Deeds"). Defendant makes no representations whatsoever, and expressly disclaims any and all warranties, concerning the properties conveyed. Plaintiff accepts the properties in their present condition and releases Defendant from all liability arising from any condition of or on the premises, whether known

or subsequently discovered, including but not limited to all claims based on environmental contamination of the premises. Plaintiff acknowledges that the properties are transferred subject to the rights not extinguished by the circuit court's foreclosure judgment vesting title in the Oakland County Treasurer pursuant to MCL 211.78k(5), including future installments of special assessments, visible or recorded easements, private deed restrictions, liens or other governmental interests imposed pursuant to the Natural Resources and Environmental Protection Act, Act 451 of the Public Act 1998, as amended, rights under a recorded oil or gas lease, or severed oil or gas interests protected from foreclosure by MCL 554.291(3).

3. **Releases and Discharges.**

In consideration of the mutual promises set forth in this Agreement . . . . This release is intended to also release any and all claims Plaintiff may have against Defendant arising from the properties transferred in Paragraphs (2)(A) and (2)(B) other than the interest that is conveyed by the Treasurer's Deeds.

The deeds for the vacant lots and the Hazel Park Property were attached to the Settlement Agreement; each stated that defendant "conveys in fee simple interest" to plaintiff the subject property.

After the Settlement Agreement was approved by the trial court, it dismissed plaintiff's wrongful foreclosure case.

In 2021, plaintiff contacted the condominium association that oversaw the vacant lots. The association informed plaintiff that the twenty vacant lots did not exist as separate parcels and were not owned by either plaintiff or defendant; rather, by operation of law, they had reverted to common elements owned by the association in 2015.[1]

Additionally, at some point after the Settlement Agreement was signed and the case dismissed, plaintiff learned that the city of Hazel Park had demolished the house on the Hazel Park Property sometime after the Amended Memorandum was signed but before the Settlement Agreement was signed. Neither party was aware of this demolition when the Settlement Agreement was signed.

---

[1] Prior to 2016, MCL 559.167(3) provided that, under certain conditions, if a developer had not completed development and construction of condominium units within 10 years after the commencement of construction, the undeveloped portions of the project would revert by operation of law to general common elements. The statute was later amended to provide that a condominium association was required to vote on and declare such a reversion, as well as record it with the register of deeds; however, that amendment was held not to operate retroactively. See *Cove Creek Condo Ass'n v Vista! Land & Home Dev, LLC*, 330 Mich App 679, 688-690; 950 NW2d 2019. In this case, the parties have not challenged the condominium association's assertion that the vacant lots reverted to common elements in 2015.

Plaintiff filed suit in December 2022, alleging that defendant had breached the Settlement Agreement by (1) failing to convey the vacant lots, and (2) failing to convey the Hazel Park Property in the same or similar condition it was in at the time of the Settlement Agreement. In lieu of an answer, defendant moved for summary disposition under MCR 2.116(C)(8), arguing that plaintiff had failed to state a claim on which relief could be granted, because plaintiff had agreed to accept the properties "as is, without warranty." The trial court granted the motion with respect to the Hazel Park Property, but denied it with respect to the vacant lots.

After the close of discovery, defendant moved for summary disposition under MCR 2.116(10), arguing that plaintiff had failed to establish a genuine issue of material fact regarding whether defendant had breached the Settlement Agreement with respect to the vacant lots. The trial court granted defendant's motion as described. The trial court found that the vacant lots had indeed reverted to common elements of the condominium association in 2015 and that neither party was aware of the reversion. The trial court held that plaintiff had "assumed the risk of loss" by agreeing to accept the vacant lots "as is, without warranty." The trial court further noted that defendant had not provided a warranty of title in any of the signed agreements.

In a footnote, the trial court opined that the parties were operating under a mutual mistake of fact regarding the vacant lots, i.e., both parties thought that defendant owned the lots. However, it held that rescission was not an appropriate remedy because plaintiff "assumed the risk of loss in connection with the mistake" by virtue of the "as is, without warranty" language. Accordingly, the trial court granted defendant's motion and dismissed plaintiff's case.

This appeal followed.

## II.  STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Rataj v Romulus*, 306 Mich App 735, 746; 858 NW2d 116 (2014). A motion brought under MCR 2.116(C)(8) tests the legal sufficiency of a claim, based on the pleadings alone, to determine if a party has stated a claim on which relief may be granted. *Id.* at 747. When reviewing a (C)(8) motion, this Court must accept as true all well-pleaded factual allegations in the complaint. *Harper Woods Retirees Ass'n v City of Harper Woods*, 312 Mich App 500, 507; 879 NW2d 897 (2015). In an action on a contract, any contracts attached to the pleadings are considered part of the pleadings. *Id.* at 506 n 3. A motion brought under MCR 2.116(C)(10) tests the factual support for a claim, in the form of documentary evidence, to determine if, viewing the evidence in the light most favorable to the nonmovant, there is a genuine issue of material fact or if the movant is entitled to judgment as a matter of law. *Rataj*, 306 Mich App at 746.

We review de novo questions of contract interpretation. *Harper Woods Retirees Ass'n*, 312 Mich App at 507. We review for an abuse of discretion a trial court's decision not to rescind a contract on the basis of mutual mistake of fact. *Lenawee Co Bd of Health v Messerly*, 417 Mich 17, 24; 331 NW2d 203 (1982).

## III.  VACANT LOTS

Plaintiff argues that the trial court erred by granting defendant's motion for summary disposition with regard to the vacant lots. We agree.

-4-

In *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016), our Supreme Court explained:

> [O]ur primary goal in interpreting any contract is to give effect to the parties' intentions at the time they entered into the contract. We determine the parties' intent by interpreting the language of the contract according to its plain and ordinary meaning. If the language of a contract is unambiguous, we must enforce the contract as written. [Citations omitted.]

In addition, "[a] court must look at the contract as a whole and give meaning to all terms." *Auto Owners Ins Co v Seils*, 310 Mich App 132, 145; 871 NW2d 530 (2015) (quotations omitted). "A contract is ambiguous when, after considering the entire contract, its words may reasonably be understood in different ways." *Id.* (citation omitted). The party claiming a breach of contract "must establish by a preponderance of the evidence that (1) there was a contract, (2) the other party breached the contract, and (3) the breach resulted in damages to the party claiming breach." *Bank of America*, 499 Mich at 100.

In the simplest terms, defendant contracted to convey properties to plaintiff that it did not own (and in fact, that did not legally exist as distinct parcels) at the time of the agreement. Defendant argued, and the trial court agreed, that, because it contracted to convey this property "as is" and did not provide a warranty of title, defendant held up its end of the bargain by conveying its interest in the lots to plaintiff, even if that interest was non-existent. We disagree. Although the Settlement Agreement does state that the lots would be conveyed "as is" and without warranty, it also states that these conveyances are "pursuant to a treasurer's deed." The attached deeds for the vacant lots indicate that defendant was conveying the vacant lots "in fee simple interest" to plaintiff. "A person having all possible rights incident to ownership of a parcel of property has the entire bundle of sticks or a fee simple title to the property." *Eastbrook Homes, Inc v Treasury Dept*, 296 Mich App 336, 348; 820 N.2d 242 (2012) (citation omitted). "Important rights flowing from property ownership include the right to exclusive possession, the right to personal use and enjoyment, the right to manage its use by others, and the right to income derived from the property." *Id.* (citation omitted). Yet, although neither party was aware of it at the time, defendant possessed none of these rights to the vacant lots, and had nothing to convey with respect to them.

Defendant invites this Court to consider the deeds as akin to a quitclaim deed, wherein a party may simply convey whatever interest they have in a property, without necessarily warranting that they in fact have any interest or title to the property. See *Richards v Tibaldi*, 272 Mich App 522, 540; 726 NW 770 (2006). But the deeds do not merely indicate that they conveyed defendant's interest in the property to plaintiff, whatever that interest may be; instead, they recite that they are conveying the property in fee simple interest. A quitclaim deed "neither warrants or professes that the title is valid." *Eastbrook Homes, Inc v Treasury Dept*, 296 Mich App 336, 349; 820 NW2d 242 (2012). The deeds in this case, by contrast, expressly state that they are conveying defendant's fee simple interest in the vacant lots to plaintiff.

Additionally, the Settlement Agreement states that the properties involved are tax-foreclosed properties, and further states in paragraph 2(C) that plaintiff "acknowledges that the properties are transferred subject to the rights not extinguished by the circuit court's foreclosure judgment *vesting title in the Oakland County Treasurer* pursuant to MCL 211.78k(5)." [Emphasis

added.] MCL 211.78k(5) is part of the Michigan General Property Tax Act, MCL 211.1 et seq., and it expressly provides that a judgment of foreclosure must specify that "fee simple title to property foreclosed by the judgment will vest absolutely in the foreclosing governmental unit," and that "the foreclosing governmental unit has good and marketable fee simple title to the property." MCL 211.78k(5)(b), (d). The judgment of foreclosure entered with respect to the vacant lots expressly so ordered. Moreover, MCL 211.78k(6) expressly provides that "[f]ee simple title . . . shall vest absolutely in the foreclosing governmental unit, and the foreclosing governmental unit shall have absolute title to the property." *Id.*

Read as a whole, the Settlement Agreement and the deeds can only be interpreted as representing that defendant had absolute ownership and fee simple interest in twenty vacant lots that defendant was able to convey, and as obligating defendant to convey those interests to plaintiff. Defendant failed to convey any interest in the lots. Accordingly, the trial court erred by determining that defendant was entitled to summary disposition on plaintiff's claim for breach of contract, and we accordingly reverse the trial court's grant of summary disposition in favor of defendant with regard to the vacant lots.

We do not find the language of the Settlement Agreement to be ambiguous, nor do we need to refer to extrinsic evidence to resolve the matter. See *Auto Owners Ins Co*, 310 Mich App at 145. To the contrary, and particularly in construing the language in the context of the overall agreement and the related deeds, we conclude that the "as is, without warranty" language of paragraph 2(A) (relating to the vacant lots) relates to the condition of the properties and not to defendant's ownership interest or title to the properties. Indeed, paragraph 2(C) of the Settlement Agreement, which is entitled "Treasurer's Deed; Disclaimer of Warranties; As is Condition," expressly describes that defendant was disclaiming warranties "concerning the properties conveyed," that plaintiff accepted the properties "in their present condition," and that plaintiff was releasing defendant from liability arising "from any condition of or on the premises." These provisions relate to the condition of the properties, not to title. But even if we were to find the language to be ambiguous, the extrinsic evidence clearly supports the conclusion that the parties intended that defendant, as the fee simple owner of the vacant lots, would convey that ownership interest to plaintiff—indeed, the Memorandum and Amended Memorandum obligate defendant to "endeavor to acquire" the property at issue. Further, the parties agree that they believed defendant owned the vacant lots at the time, and intended that defendant convey ownership to plaintiff. Contrary to the trial court's holding, there was no evidence presented that, viewed in the light most favorable to plaintiff, established that plaintiff had assumed the risk that defendant had absolutely no ownership interest in the vacant lots, despite its representation to the contrary, or the risk that the vacant lots in fact did not legally exist at the time of the Settlement Agreement.

Additionally, plaintiff is not barred from asserting its breach of contract claim by the release paragraph (paragraph 3) of the Settlement Agreement. The release paragraph explicitly exempts from release claims by plaintiff arising from the "interest that is conveyed by the Treasurer's Deeds."

We hold that the trial court erred by granting defendant's motion for summary disposition regarding the vacant lots. *Rataj*, 306 Mich App at 746. Although the trial court also found a mutual mistake of fact, it noted that neither party had sought rescission of the contract in this matter, and found that plaintiff had assumed the risk of loss in connection with the mistake. See

*Messerly*, 417 Mich at 32. Although we do not agree that plaintiff assumed the risk that defendant was not the legal owner of the vacant lots, or that the lots did not legally exist, we agree that neither party appears to have sought rescission in this matter; the trial court accordingly did not abuse its discretion by declining to order rescission despite finding a mutual mistake of fact. *Id.*

## IV. HAZEL PARK PROPERTY

Plaintiff also argues that the trial court erred by granting defendant's motion for summary disposition regarding the Hazel Park Property. We disagree. In this respect, we agree with the trial court's conclusion that plaintiff's acceptance of the property "as is" precludes its claim.

As discussed, the Settlement Agreement provides that "Plaintiff accepts the properties in their present condition and releases Defendant from all liability arising from any condition of or on the premises, whether known or subsequently discovered, including but not limited to all claims based on environmental contamination of the premises." It is undisputed that at the time the parties entered into the Settlement Agreement, the demolition had already occurred. Further, although the Amended Memorandum obligated defendant to maintain the Hazel Park Property until it was conveyed to plaintiff, the Settlement Agreement contains an integration clause indicating that it supersedes all prior agreements, including the Amended Memorandum specifically. Moreover, plaintiff had the right to inspect the property until it was conveyed to plaintiff. The unambiguous language of the Settlement Agreement indicates that plaintiff agreed to the conveyance of the Hazel Park Property in whatever condition it was in at the time of the Settlement Agreement, and agreed to release defendant from claims related to any such condition, even if the condition was unknown at the time and subsequently discovered. We enforce unambiguous contractual language as written. *Bank of America, NA*, 499 Mich at 100.

Affirmed in part, reversed in part, and remanded for further proceedings.[2] We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Christopher P. Yates

---

[2] Plaintiff also argues in the alternative that the trial court erred by not allowing plaintiff to amend its complaint to add claims for reformation or rescission based on mutual mistake. See *Ormsby v Capital Welding, Inc*, 471 Mich 45, 52-53; 684 NW24 320 (2004), citing MCR 2.116(I)(5) ("When a trial court grants summary disposition pursuant to MCR 2.116(C)(8), or (C)(10), the opportunity for the nonprevailing party to amend its pleadings pursuant to MCR 2.118 should be freely granted, unless the amendment would not be justified."). To the extent that plaintiff argues that the trial court should have permitted amendment with regard to the vacant lots, because we reverse the trial court's grant of summary disposition, we need not address the argument in the alternative. With regard to the Hazel Park property, any amendment would be futile in light of the clear contractual language at issue. *Id.* at 53.