*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEUTSCHE BANK NATIONAL TRUST COMPANY,

UNPUBLISHED
January 30, 2020

Plaintiff/Counterdefendant-Appellee,

v

No. 347040
Wayne Circuit Court
LC No. 18-008390-CZ

ANDREW HARGREAVES,

Defendant/Counterplaintiff-Appellant,

and

LAWRENCE M. HAVER,

Defendant,

and

JOAN HAVER, also known as JOAN SANBORN,

Defendant/Counterplaintiff.

Before: METER, P.J., and FORT HOOD and REDFORD, JJ.

PER CURIAM.

Defendant/counterplaintiff Andrew Hargreaves (Hargreaves) appeals as of right the trial court's order granting plaintiff/counterdefendant, Deutsche Bank National Trust Company (Deutsche Bank) summary disposition of his counterclaims and the trial court's order granting Deutsche Bank immediate possession of property commonly known as 1951 Alanson, Westland, Michigan (the Property). We affirm.

-1-

## I. FACTUAL BACKGROUND

On November 2, 1993, the Secretary of Veterans Affairs (the VA) entered into a land contract for the sale of the Property to defendants Lawrence Haver (Lawrence) and Joan Haver (Joan) (collectively, the Havers) under which they agreed to purchase the Property. The land contract required the Havers to make a down payment and to pay the balance plus interest in monthly installments. The land contract provided further in pertinent part as follows:

14. Delivery to and acceptance of this Agreement by Buyer shall constitute delivery to and acceptance by Buyer of possession of the property described herein and shall constitute an acknowledgment by the Buyer that he/she has inspected and examined the property, is satisfied with its condition and Buyer acknowledges that he/she is buying the property "as is." . . .

15. Time is of the essence of this Agreement and if default be made and continue for a period of thirty (30) days in the payment of any of the installments of principal, interest, or any other items hereinbefore stipulated, when the same become severally due hereunder, or in the payment of any other sum herein agreed to be paid by Buyer, or if default be made in the performance by Buyer of any other agreement, covenant, or obligation of Buyer hereunder, then in either, or any of said events, the whole unpaid balance due under the terms of this Agreement shall, at the option of Seller, immediately become due and payable and Seller may, at his/her option, (a) terminate by simple declaration of the election so to do, with or without notice, all of Buyer's rights under this Agreement and all of Buyer's right, title, and interest in the property; or (b) terminate all of Buyer's right under this Agreement and all of Buyer's right, title, and interest in the property in any appropriate proceeding, legal or equitable, or (c) enforce Buyer's obligations hereunder in any appropriate proceeding, legal or equitable. Buyer agrees to pay all costs and expenses, including a reasonable sum for attorney's fees incurred by Seller in terminating Buyer's rights under this Agreement or claims to the property or in enforcing any or all of the terms of this Agreement, and in appropriate judicial proceedings, if any are initiated to establish or maintain Seller's right or title to, and possession of said property after breach by Buyer, free of any title or claims of Buyer.

* * *

17. (a) Upon Seller exercising the right of termination as provided in paragraph 15 hereof, all rights and interest hereby created and then existing in Buyer and in all claiming under Buyer, shall wholly cease and determine. Buyer shall thereupon quit and surrender to Seller, without demand, peaceful possession of said property in as good condition as it is now, reasonable wear and tear alone excepted. . . .

18. Upon (a) Payment in full of all sums agreed to be paid under this contract; or (b) At Seller's option, upon execution of a note and purchase money mortgage, as provided in paragraph 19 hereof, the Seller shall execute and deliver

a deed conveying to Buyer all the Seller's right, title, and interest in said property, subject to the exceptions indicated in paragraph 3 hereof, with covenant only that the grantor has not done, committed or wittingly or willingly suffered to be done or committed, any act, matter, or thing whatsoever, whereby the premises, or any part thereof, is, are or shall be charged or encumbered in title, estate or otherwise.

\* \* \*

22. If all or any part of Buyer's interest in the property or this Agreement be assigned without first obtaining the written consent of the Seller, the whole unpaid balance payable under the terms of this Agreement shall immediately become due and payable at the election of the Seller. . . . .

\* \* \*

24. Failure or delay of the Seller to enforce any right or to exercise any option hereunder available because of any default shall not operate as a waiver of the right of the Seller to thereafter enforce such right or to exercise such option or any other option, for this same or any other default.

\* \* \*

The covenants in this Agreement contained shall be binding upon, and the benefits and advantages hereunder shall inure to, the respective heirs, executors, administrators, successors, and assigns of the parties hereto.

On February 24, 1994, the VA quitclaim deeded the Property to Bankers Trust Company of California, as trustee on behalf of Vendee Mortgage Trust 1994-1, a trust established under New York law. The deed expressly stated that the Property was conveyed "subject to an installment contract for the purchase of said real estate dated November 2, 1993, between the [VA] as vendor and Lawrence M. Haver and Joan Haver as vendees." The trial court record includes a title search performed by Carrington Title Services for Joan, having an effective date of December 4, 2017. It indicates that the quitclaim deed was recorded, but a copy of the land contract could not be located in the Wayne County Register of Deeds. The title search described various later transfers of the Property including one that indicated that the Havers transferred the Property on February 5, 2003, by quitclaim deed from themselves to the Lawrence M. Haver Revocable Trust Agreement. On April 23, 2008, Joan, as successor trustee of the Lawrence M. Haver Revocable Trust Agreement, transferred the Property to herself as trustee of the Joan Leslie Haver Revocable Trust Agreement by fiduciary deed. Then, on December 30, 2013, the Joan Leslie Haver Revocable Trust Agreement transferred the Property to Hargreaves by a purported warranty deed. The title search did not disclose any conveyance of title to the property to the Havers.

In May 2018, Deutsche Bank, as successor in interest to Bankers Trust Company of California, as trustee of the Vendee Mortgage Trust 1994-1, brought summary proceedings in district court on the grounds that the Havers forfeited the land contract and it had the right to recover possession of the Property because no installment payments had been made on the land contract since February 2013. Deutsche named Hargreaves and the Havers as defendants.

Deutsche Bank alleged that the principal balance due equaled $29,190.99 and the total amount in arrears equaled $33,423.54. Joan answered the complaint by admitting the allegation of the existence of a land contract, but generally denied the remaining allegations. She asserted two counterclaims in which she acknowledged the existence of the land contract and that the Havers made payments to the VA until Bank of America began servicing the debt after which they paid it. She alleged that Bank of America violated the Real Estate Settlement Procedures Act, 12 USC 2609(c), and the Fair Debt Collections Practices Act, 15 USC 1692d, related to servicing and collection of her debt. Hargreaves answered the complaint by asserting that he lacked knowledge or notice of a land contract when he purchased the Property and obtained a warranty deed that was recorded in 2014. Hargreaves counterclaimed seeking equitable relief including quiet title to the Property claiming that he had superior right to it by virtue of a warranty deed from Joan.[1] Hargreaves alleged that he lacked notice of any land contract and for unjust enrichment because he paid $20,000 to purchase the Property and invested additional money to improve it.[2] Hargreaves alleged that the land contract constituted a mortgage loan and because plaintiff treated it as a mortgage it waived any right to foreclose upon the Property under summary proceedings. Hargreaves also moved for removal of the case to the circuit court. The district court transferred the case to the trial court because Hargreaves asserted equitable claims over which the district court lacked jurisdiction.

Deutsche Bank moved for and was granted summary disposition of Hargreaves's counterclaims because Joan lacked transferable title in 2013 when she attempted to convey the Property to Hargreaves, and Hargreaves had notice of the land contract in the record title and could have discovered it through a proper title search. The trial court also granted Deutsche Bank's motion for summary disposition for judgment of possession and entered an order that Deutsche Bank could take immediate possession of the Property and obtain assistance from the sheriff for execution of eviction.

## II. STANDARDS OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition, *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 162; 809 NW2d 553 (2011), issues of statutory construction, *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008), a trial court's ruling on equitable matters, including a quiet-title determination, *Richards v Tibaldi*, 272 Mich App 522, 528; 726 NW2d 770 (2006), and jurisdictional questions, *Kar v Nanda*, 291 Mich App 284, 286; 805 NW2d 609 (2011). We review de novo a trial court's ruling on a summary disposition motion. In *Bodnar v St John Providence, Inc*, 327 Mich App 203, 212; 933 NW2d 363 (2019), this Court summarized the standard for summary disposition motions under MCR 2.116(C)(8) as follows:

---

[1] Lawrence passed away in 2007 and Joan ultimately agreed by stipulation to dismiss her counterclaims and relinquish any claim to the Property.

[2] Hargreaves has not presented arguments on appeal regarding his unjust enrichment claim.

-4-

Summary disposition is appropriately granted under MCR 2.116(C)(8) when the opposing party has failed to state a claim upon which relief may be granted. *Dalley v Dykema Gossett PLLC*, 287 Mich App 296, 304; 788 NW2d 679 (2010). A motion under MCR 2.116(C)(8) tests the legal sufficiency of a complaint on the basis of the pleadings alone. *Id*. All well-pleaded factual allegations are to be accepted as true and are to be construed in the light most favorable to the nonmoving party. *Johnson v Pastoriza*, 491 Mich 417, 435; 818 NW2d 279 (2012). A party may not support a motion under MCR 2.116(C)(8) with documentary evidence such as affidavits or depositions. *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994). However, when an action is premised on a written contract, the contract generally must be attached to the complaint and thus becomes part of the pleadings. *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007); see also MCR 2.113(C).

A motion under MCR 2.116(C)(8) may be granted if a claim is clearly unenforceable and no factual development could possibly justify recovery. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). But where the parties and trial court relied on matters outside the pleadings, MCR 2.116(C)(10) is the appropriate basis for review. *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 457; 750 NW2d 615 (2008) (citation omitted). A motion for summary disposition under MCR 2.116(C)(10) challenges the "factual adequacy of a complaint on the basis of the entire record, including affidavits, depositions, admissions, or other documentary evidence." *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 115; 839 NW2d 223 (2013). A trial court's grant of summary disposition under MCR 2.116(C)(10) is proper when the evidence, "viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is therefore entitled to judgment as a matter of law." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 5; 890 NW2d 344 (2016). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Gorman*, 302 Mich App at 116 (citation omitted). The interpretation of a deed is reviewed de novo on appeal. *In re Rudell Estate*, 286 Mich App 391, 402-403; 780 NW2d 884 (2009). We review de novo an equitable action, and we review the trial court's findings of fact for clear error. See *Canjar v Cole*, 283 Mich App 723, 727; 770 NW2d 449 (2009). Quiet-title actions are equitable in nature. *Id*. The decision to grant equitable relief rests within the sound discretion of the deciding court. See *Tkachik v Mandeville*, 487 Mich 38, 45; 790 NW2d 260 (2010).

III. ANALYSIS

A. STIPULATED DISMISSAL OF CLAIMS BETWEEN JOAN AND DEUTSCHE BANK

Hargreaves first argues that the trial court erred by entering a stipulated order dismissing the claims between Joan and Deutsche Bank in violation of MCR 2.602(B) because the trial court did not hold a hearing, he never approved the order, the order had not been submitted under the seven-day rule, and the order had not been submitted to the trial court for settlement. We disagree.

-5-

"For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *Mouzon v Achievable Visions*, 308 Mich App 415, 419; 864 NW2d 606 (2014) (quotation marks and citation omitted). Because Hargreaves failed to raise this issue below, it is unpreserved. "We review unpreserved challenges for plain error." *Total Armored Car Serv, Inc v Dep't of Treasury*, 325 Mich App 403, 412; 926 NW2d 276 (2018). To establish plain error, Hargreaves must show (1) that an error occurred, (2) that the error was plain, and (3) that the plain error affected his substantial rights. *Henderson v Dept of Treasury*, 307 Mich App 1, 9; 858 NW2d 733 (2014). To merit relief, Hargreaves must establish prejudice, i.e., that the error affected the outcome of the proceedings. *Id.*

MCR 2.504(A) governs voluntary dismissal of an action. MCR 2.504(A)(1) allows dismissal without a court order when the parties stipulate to dismissal or when the plaintiff dismisses an action before the adverse party serves an answer. Otherwise, "an action may not be dismissed at the plaintiff's request except by order of the court on terms and conditions the court deems proper." MCR 2.504(A)(2); *Walbridge Aldinger Co v Walcon Corp*, 207 Mich App 566, 570; 525 NW2d 489 (1994). Dismissal under this subrule is without prejudice unless the order indicates otherwise. MCR 2.504(A)(2)(b). A trial court has discretion to grant requests for voluntary dismissal but it should consider the competing interests of the parties, any resultant inconvenience to the court, and protect defendants from abuse. *African Methodist Episcopal Church v Shoulders*, 38 Mich App 210, 212; 196 NW2d 16 (1972).

In this case, the record reflects that, on October 12, 2018, Deutsche Bank and Joan stipulated and agreed to the dismissal of all of Joan's claims respecting the Property including her land contract interest and any possessory interest she had. Further, Joan agreed to the entry of an order of land contract forfeiture and possession against her. She stipulated to Deutsche Bank's possession of the Property. Pursuant to the stipulation, Joan agreed to dismiss her claims against Deutsche Bank with prejudice. Deutsche Bank similarly agreed to dismiss its claims against Joan related to her debt under the land contract and any claim for a deficiency. Deutsche Bank and Joan also stipulated that Deutsche Bank had no responsibility to defend claims that Hargreaves may have against Joan. Deutsche Bank and Joan electronically filed their stipulated order on October 15, 2018. The trial court entered the order on October 16, 2018. That same day, Deutsche Bank and Hargreaves appeared for a hearing at which the trial court indicated on the record that the status of the case had been discussed in chambers, including the dismissal of Joan's counterclaims. The trial court made no reference to the order of land contract forfeiture included in the stipulation, but its reference to the order and entry of the same indicates that the trial court considered and agreed to grant the relief requested in the stipulated order by Deutsche Bank and Joan.

MCR 2.602(B)(1) authorized the trial court to sign the order at the time it granted the relief provided by the order. The trial court, therefore, addressed the issue with the parties, acted well within its discretion, and appropriately entered the stipulated order between Deutsche Bank and Joan. The order disposed of their competing claims. Entry of the order did not affect any claims Hargreaves had against Joan. Hargreaves has neither established plain error nor that the trial court's entry of the stipulated order affected his substantial rights. Accordingly, he lacks entitlement to relief in this regard.

### B. SUMMARY DISPOSITION OF HARGREAVES'S COUNTERCLAIMS

Hargreaves also argues that the trial court erred by granting Deutsche Bank's motion for summary disposition of his counterclaims. We disagree.

The record reflects that the land contract and relevant deeds appearing in the Property's chain of title were attached to the parties' respective pleadings and submissions in this case. Accordingly, the trial court could appropriately consider those documents for purposes of deciding Deutsche Bank's motion.

In an action to quiet title, the claimant must establish a prima facie case of title in the subject property; the burden then shifts to the adverse party to prove a superior interest. *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Road Comm*, 236 Mich App 546, 550; 600 NW2d 698 (1999). Although the parties disagree about the legal effect of the recorded instruments in this case, there is no dispute regarding which instruments were recorded in the chain of title. The record title for the Property indicates that America's Lending Network, Inc. acquired title to the Property and thereafter conveyed title to the Property to the VA in February 1993. The VA quitclaim deeded its interest in the Property to Bankers Trust Company of California, N.A., as trustee of the Vendee Mortgage Trust 1994-1, subject to the 1993 land contract between the VA and the Havers. Deutsche Bank claims title to the Property as the successor in interest by merger with Bankers Trust Company of California, N.A.

The Havers quitclaim deeded their interest in the Property to Lawrence's trust, and after Lawrence died, Joan, as the successor trustee of Lawrence's trust, transferred the trust's interest in the Property to Joan's trust. Joan's trust later attempted to convey the Property by a purported warranty deed to Hargreaves. Hargreaves contended that he held superior title to the Property under that warranty deed.

Under MCL 565.1, conveyances of land may be made by deed. Under MCL 565.3, a quitclaim deed suffices to pass all of the interest one holds in property that the grantor could convey by a deed of bargain of sale. "A quitclaim deed is, by definition, a deed that conveys a grantor's complete interest or claim in certain real property but that neither warrants nor professes that the title is valid." *Mich Dept of Natural Resources v Carmody-Lahti Real Estate, Inc*, 472 Mich 359, 377-378; 699 NW2d 272 (2005) (quotation marks, citations, and alteration omitted). Under MCL 565.4, a deed holder may convey only the interest held. When a conveyance is made by a warranty deed, it "shall be deemed and held to be a conveyance in fee simple to the grantee, his heirs and assigns, with covenant from the grantor for himself and his heirs and personal representatives, that he is lawfully seized of the premises, has good right to convey the same, and guarantees the quiet possession thereof; that the same are free from all incumbrances, and that he will warrant and defend the title to the same against all lawful claims." MCL 565.151. The "covenant of seisin is a covenant of ownership in fee simple." 1 Cameron, *Michigan Real Property Law* (3d ed), Deeds, § 10.21, p 361, citing *Peck v Houghtaling*, 35 Mich 127 (1876).

The record does not reflect that the Havers ever acquired legal title to the Property. The record chain of title does not indicate any recorded deed that conveyed the Property to the Havers. It indicates only that the Havers entered the subject land contract for purchase of the Property by installments.

The proper disposition of Hargreaves's quiet title claim turned on the respective rights held by the parties to the land contract and the legal effects of their later conveyances. A land contract and a mortgage are not synonymous:

> The term land contract is commonly used in Michigan as particularly referring to agreements for the sale of an interest in real estate in which the purchase price is to be paid in installments (other than an earnest money deposit and a lump-sum payment at closing) and no promissory note or mortgage is involved between the seller and the buyer. [*Zurcher v Herveat*, 238 Mich App 267, 291; 605 NW2d 329 (1999) (quotation marks and citations omitted).]

A land contract is a form of "executory contract in which legal title remains in the seller/vendor until the buyer/vendee performs all the obligations of the contract while equitable title passes to the buyer/vendee upon proper execution of the contract." *Id*. at 291. Upon complete performance of a land contract vendee's contractual duties, i.e., complete payment of the purchase price and satisfaction of any other conditions, the vendor is obligated to convey legal title to the vendee. MCL 565.361(1).

Our Supreme Court "has consistently held that under a land contract, although the vendor retains legal title until the contractual obligations have been fulfilled, the vendee is given equitable title, and that equitable title is a present interest in realty that may be sold, devised, or encumbered." *Graves v American Acceptance Mortg Corp*, 469 Mich 608, 614; 677 NW2d 829 (2004). In *Graves*, our Supreme Court considered the rights incident to legal and equitable ownership of land and explained that, in a land contract situation,

> the vendee purchases the property upon signing the land contract and acquiring an equitable interest therein. At that point, the vendee acquires "seisin" and a present interest in the property that may be sold, devised, or encumbered. That the vendee may ultimately default on the contract does not negate the fact that the vendee has, in a real sense, purchased the relevant property. That legal title remains in the vendor until full performance of all contractual obligations likewise does not negate the fact that the vendee has already purchased the property. The vendor's legal title, . . . is only a trust coupled with an interest by way of security for a debt[.] It represents but an ordinary money debt, secured by the contract. [*Id*. at 616-617 (quotation marks and citations omitted).]

The parties to the subject land contract did not include the term "mortgage" anywhere within the document and the Havers never executed a promissory note in relation to the transaction. Because the Havers purchased the Property under a land contract, they held only an equity ownership interest in the Property. When they quitclaim deeded their interest to Lawrence's trust, the trust acquired their equity ownership interest. When Joan, as successor trustee of Lawrence's trust, conveyed by fiduciary deed Lawrence's trust's interest, Joan's trust acquired the Havers' equity ownership interest. Joan's trust did not hold a fee interest, legal and equitable title to the Property. To acquire full ownership and fee title to the Property, the terms of the land contract had to be fulfilled. The Havers, Lawrence's trust, and Joan's trust failed to ever do so. Moreover, the record title to the Property reflects that no conveyance of legal title to the Havers, Lawrence's trust, or Joan's trust ever occurred. Therefore, they never acquired fee

simple title to the Property. "A person having all possible rights incident to ownership of a parcel of property has the entire bundle of sticks or a fee simple title to the property." *Eastbrook Homes, Inc v Treasury Dept*, 296 Mich App 336, 348; 820 NW2d 242 (2012) (citation omitted). "Important rights flowing from property ownership include the right to exclusive possession, the right to personal use and enjoyment, the right to manage its use by others, and the right to income derived from the property." *Id*. (citation omitted). "A warranty deed conveys the entire bundle of rights to the property from the grantor to the grantee in fee simple; it also includes the grantor's covenant that the grantor has good, marketable title and guarantees to the grantee the right of quiet possession." *Id*. (citation omitted). Here, the Havers, Lawrence's trust, and Joan's trust lacked fee simple ownership and had no authority to convey fee simple title to the Property. Accordingly, Joan's trust could not convey fee title to the Property by warranty deed to Hargreaves.

Hargreaves sought to quiet title in his favor as fee owner of the Property. Among other things, he argued that, under Michigan's race-notice statute, MCL 565.29, he had the highest priority interest in the Property under the purported warranty deed from Joan's trust. His argument lacks merit because Joan's trust could not convey fee title to him and a preexisting superior interest was recorded in the record title.

"Michigan is a race-notice state, and owners of interests in land can protect their interests by properly recording those interests." *Richards*, 272 Mich App at 539 (quotation marks and citation omitted). Under MCL 565.29,

> [e]very conveyance of real estate within the state hereafter made, which shall not be recorded as provided in [MCL 565.1 *et seq*.], shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded.

In other words, "the holder of a real estate interest who first records his or her interest generally has priority over subsequent purchasers." *Richards*, 272 Mich App at 539. Because Bankers Trust Company of California, N.A., as trustee of the Vendee Mortgage Trust 1994-1, acquired the Property through the quitclaim deed from the VA recorded on April 1, 1994, Hargreaves cannot claim an interest prior and superior to that recorded interest. The record title indicates that he recorded his interest more than 20 years after Deutsche Bank's predecessor acquired and recorded its interest in the Property.

Hargreaves makes much of the fact that there was no recorded assignment of the VA's interest in the land contract, and that the Havers had possession of the Property for over 20 years before he purchased it from Joan's trust. Hargreaves's argument lacks merit because "[t]he conveyance of land by a vendor subject to an outstanding contract operates as an assignment to the grantee of the contract between the vendor and the purchaser . . . ." *Kramer v Davis*, 371 Mich 464, 469; 124 NW2d 292 (1963) (quotation marks and citation omitted). Neither the VA nor its successor in interest had any obligation to record a separate assignment of the land contract because the conveyance of the Property itself by quitclaim deed operated as an assignment of the VA's interest in the land contract. Moreover, the VA's quitclaim deed to Bankers Trust Company of California, N.A., as trustee of the Vendee Mortgage Trust 1994-1,

specifically stated that the conveyance was subject to the 1993 land contract between the VA and the Havers.

The fact that the Havers physically possessed the Property for 20 years is not dispositive because they owned an equitable interest that permitted them possession. Possession under a land contract for 20 years, however, did not ripen into legal title nor could it. For the Havers, or any of their successors, the terms of the land contract had to be fulfilled for them to acquire legal title and fee ownership of the Property. Michigan law does not support Hargreaves's contention that he obtained superior title to Deutsche Bank. Hargreaves cannot establish any right to quiet title to the Property in himself because the Havers could not convey a fee simple interest to him since they did not own fee title. Because Joan's trust did not own the Property in fee simple it could not convey by warranty deed title to the Property. Hargreaves purported warranty deed, based on an interest Joan's trust never had, lacks validity and conveyed no legal estate or present title to him.

Further, MCL 565.29 only protects a later interest holder who purchases in "good faith" without actual or constructive notice of a defect in the grantor's title. *Coventry Parkhomes Condo Ass'n v Fed Nat'l Mtg Ass'n*, 298 Mich App 252, 256; 827 NW2d 379 (2012). For purposes of determining interests in real property, notice refers to the following:

> When a person has knowledge of such facts as would lead any honest man, using ordinary caution, to make further inquiries concerning the possible rights of another in real estate, and fails to make them, he is chargeable with notice of what such inquiries and the exercise of ordinary caution would have disclosed. [*Richards*, 272 Mich App at 539, quoting *Kastle v Clemons*, 330 Mich 28, 31; 46 NW2d 450 (1951).]

Notice does not require actual knowledge of another's interest in property; the mere possibility of the rights held by another will suffice. *Penrose v McCullough*, 308 Mich App 145, 153; 862 NW2d 674 (2014). A properly recorded interest provides constructive notice to all later interest holders. *Id*.

Hargreaves cannot claim good-faith purchaser status because he had constructive notice that Joan's trust lacked fee title and could not convey a fee simple interest in the Property. *Id*.; *Coventry Parkhomes Condo Ass'n*, 298 Mich App at 256. Although the land contract between the Havers and the VA was not recorded, the recorded 1994 quitclaim deed from the VA explicitly conveyed title "subject to an installment contract for the purchase of said real estate dated November 2, 1993, between the Secretary of Veterans Affairs as vendor and Lawrence M. Haver and Joan Haver as vendee(s)." Further, the record title did not indicate a conveyance of fee title by any form of deed to the Havers at any time. The Havers, therefore, only held an equitable interest in the Property under the land contract. Consequently, Hargreaves was on notice of the existence of Bankers Trust Company of California, N.A., as trustee of the Vendee Mortgage Trust 1994-1's prior and superior interest in the Property subject to the 1993 land contract between the VA and the Havers.

Further, the lack of any conveyance of fee simple interest in the Property to the Havers, Lawrence's trust, or Joan's trust, placed him on notice that Joan's trust neither held fee title to

the Property nor could convey such title to him by warranty deed. A reasonable person under the circumstances, using ordinary caution, at the very least, would be aware that further inquiries were required to determine the interests in the Property. See *Penrose*, 308 Mich App at 153; *Richards*, 272 Mich App at 539. Hargreaves's failure to attain actual knowledge of Deutsche Bank's superior interest did not negate the fact that the record title placed him on notice of others holding interests superior to Joan's trust's limited interest in the Property. Hargreaves, therefore, cannot claim bona fide purchaser status under the circumstances presented in this case. A bona fide purchaser is one who has acquired a property interest for consideration and without notice of claims of interest in the property by a third party. *Richards*, 272 Mich App at 539. The trial court correctly discerned that Hargreaves's claims lacked merit as a matter of law because his claim to quiet title was clearly unenforceable. The record reflects that no genuine issue of material fact existed in this regard. The trial court, therefore, did not err by dismissing Hargreaves's counterclaims against Deutsche Bank.

In its complaint, Deutsche Bank alleged that Joan last made a payment under the land contract on February 1, 2013, leaving a principal balance unpaid and in arrears. Although Joan initially disputed the balance due, she did not deny that she never fully satisfied her payment obligations under the land contract. Further, she stipulated to the dismissal of her claims against Deutsche Bank with prejudice which constituted an adjudication of her claims on the merits. Her stipulation also conceded that she forfeited the land contract which triggered Deutsche Bank's right to enforce the land contract and take possession of the Property. The record reflects that Deutsche Bank gave the Havers notice of forfeiture and then commenced summary proceedings for possession of the Property. Hargreaves cannot establish that Joan was not in default and that Deutsche Bank lacked entitlement to pursue possession of the Property because of the Havers' defaults.

Hargreaves also argues that the equitable doctrine of laches served as a defense to Deutsche Bank's action and that it precluded Deutsche Bank from obtaining any relief. He asserts that Deutsche Bank waited five years from the date on which its cause of action accrued to commence this action and in so doing caused him prejudice because he purchased the Property from Joan's trust without notice of the unrecorded land contract. This argument lacks merit.

In *Knight v Northpointe Bank*, 300 Mich App 109, 114-115; 832 NW2d 439 (2013), this Court explained the laches doctrine and the circumstances in which it may be invoked:

> As our Supreme Court has explained, a complainant in equity must come to the court with a clean conscience, in good faith, and after acting with reasonable diligence: " 'Nothing can call forth this court into activity but conscience, good faith and reasonable diligence; where these are wanting the court is passive, and does nothing.' " *Henderson v Connolly's Estate*, 294 Mich 1, 19; 292 NW 543 (1940), quoting *Campau v Chene*, 1 Mich 400, 405 (1850). If a plaintiff has not exercised reasonable diligence in vindicating his or her rights, a court sitting in equity may withhold relief on the ground that the plaintiff is chargeable with laches. *Lothian v Detroit*, 414 Mich 160, 168; 324 NW2d 9 (1982). "[W]hen laches appears, the court merely leaves the parties where it finds them." *Duck v McQueen*, 263 Mich 325, 328; 248 NW 637 (1933). This is so because equity will not lend aid to those who are not diligent in protecting their

own rights. *Mogk v Stroecker*, 243 Mich 668, 672; 220 NW 730 (1928). The rule that equity aids the vigilant is designed to discourage laches by making it a bar to relief and to prevent the enforcement of stale demands. *Henderson*, 294 Mich at 19.

Although considerations of timing are important when determining whether laches applies to the facts, laches is not triggered by the passage of time alone. *Lothian*, 414 Mich at 168. Laches is an equitable tool used to provide a remedy for the inconvenience resulting from the plaintiff's delay in asserting a legal right that was practicable to assert. *Dep't of Pub Health v Rivergate Manor*, 452 Mich 495, 507; 550 NW2d 515 (1996). As such, "when considering whether a plaintiff is chargeable with laches, we must afford attention to prejudice occasioned by the delay." *Lothian*, 414 Mich at 168. It is the prejudice occasioned by the delay that justifies the application of laches. *Dunn v Minnema*, 323 Mich 687, 696; 36 NW2d 182 (1949) ("This Court has repeatedly held that mere delay in attempting to enforce a right does not constitute laches, but that it must further appear that the delay resulted in prejudice to the party claiming laches of such character as to render it inequitable to enforce the right.").

For laches to apply, the person invoking the doctrine must establish inexcusable delay by the plaintiff in bringing suit, and that the delay resulted in prejudice. *Tenneco Inc v Amerisure Mut Ins Co*, 281 Mich App 429, 457; 761 NW2d 846 (2008). Equitable relief, however, "is not strictly a matter of right, but rather a remedy, the granting of which rests in the sound discretion of the court." *Bazzi v Sentinel Ins Co*, 502 Mich 390, 409; 919 NW2d 20 (2018), quoting *Amster v Stratton*, 259 Mich 683, 686; 244 NW 201 (1932). Further, "one who seeks equity must do equity." *Id.*, quoting *Windisch v Mortgage Security Corp of America*, 254 Mich 492, 495; 236 NW 880 (1931).

In this case, Hargreaves lacks entitlement to equitable relief under the laches doctrine because he cannot establish inexcusable delay by Deutsche Bank or that Deutsche Bank's conduct caused him prejudice. The record does not reflect that Deutsche Bank inexcusably delayed seeking enforcement of its rights under the land contract. Deutsche Bank's claims were based upon the land contract, and the Havers' nonpayment of their installment obligations which constituted a breach of the terms of the land contract. A claim based upon a contract accrues when the wrong is committed. MCL 600.5827. Deutsche Bank alleged that the Havers ceased payment of the required installments as of February 2013 and it commenced summary proceedings after giving the Havers notice of forfeiture in 2018. Deutsche Bank did not waive or release any rights to enforce the land contract and it sought enforcement of its rights well within the 15-year limitation period applicable to actions for possession of land. MCL 600.5801(4). The land contract provided that failure or delay of enforcement of any right under the land contract because of any default shall not operate as a waiver of the right to enforce. The record does not indicate definitively why Deutsche Bank waited before declaring the land contract forfeited and taking action to obtain possession of the Property. The record does indicate, however, that its servicing agent, Bank of America, had customer relations managers contact the Havers regarding their nonpayment of their debt in an effort to rectify the situation before taking action to enforce rights under the land contract. Joan responded by having an attorney send a letter on her behalf that incorrectly denied the existence of the debt. That appears to have

triggered Deutsche Bank's action to enforce its rights. Based upon the record before us, we cannot say that Deutsche Bank inexcusably delayed enforcing its rights.

Moreover, of greater significance, the record reflects that the prejudice about which Hargreaves complains resulted from Hargreaves's own conduct. The Property's record title placed him on notice of the existence of the land contract and that fee title to the Property had never passed and vested in the Havers. Because he had such notice, he had the obligation to prudently inquire further and determine the interests in the Property before entering the transaction with Joan's trust. That he failed to do so and transacted to his prejudice cannot be blamed upon Deutsche Bank. Further, the fact that he purchased a title policy from a title insurance company that insured a purported fee simple interest in the Property does not negate that the record title plainly gave him notice that an interest existed in the Property prior and superior to the interest he hoped to acquire. The record reflects that a proper search of the record title would have plainly disclosed the status of title to the Property and that Joan's trust could not convey to him by warranty deed a fee ownership interest. Although he believed that he obtained fee title to the Property, in actuality, he did not. Equity will not lend aid to those who are not diligent in protecting their own rights. *Mogk*, 243 Mich at 672. Under the circumstances presented in this case, Hargreaves could not invoke the laches doctrine with a clean conscience and in good faith because he failed to act with reasonable diligence to discover the prior and superior interests in the Property. Therefore, he cannot establish prejudice attributable to Deutsche Bank warranting the application of the laches doctrine in this case to prevent Deutsche Bank from exercising its rights under the land contract. Accordingly, the trial court did not err by declining to apply the laches doctrine nor by granting Deutsche Bank's motion for summary disposition of Hargreaves's equitable counterclaims.

## C. JUDGMENT OF POSSESSION

Hargreaves next argues that the trial court erred by granting Deutsche Bank's motion for judgment of possession by not complying with the procedures and requirements specified in Michigan's judicial foreclosure statute, MCL 600.3101 *et seq*. We disagree.

MCL 600.5741 authorizes district courts to enter judgments of possession if the plaintiff proves entitlement to possession of land because of nonpayment of moneys under an executory contract for purchase of the premises. MCR 4.201 authorizes district courts to conduct summary proceedings in cases involving the forfeiture of land contracts. MCR 4.201 further authorizes district courts to determine the rights of parties to possess properties subject to land contracts and sets forth the requirements for judgments entered pursuant to such summary proceedings.

In this case, after giving the Havers notice of their forfeiture of the land contract, Deutsche Bank initiated summary proceedings for possession of the Property in the district court as permitted under MCL 600.5701 *et seq*. and as provided under MCR 4.201. Deutsche Bank based the action on the Havers' failure to perform their payment obligations. After Hargreaves counterclaimed against Deutsche Bank and moved for removal, the district court removed the

case to the trial court because Hargreaves asserted equitable claims that the district court ruled deprived it of jurisdiction.[3]

Hargreaves argues that Deutsche Bank and the trial court needed to follow the procedures and requirements specified in Michigan's judicial foreclosure statute, MCL 600.3101 *et seq.*, before the trial court could enter an order of possession of the Property for Deutsche Bank. He argues without citation to authority that Deutsche Bank could not seek possession, the relief requested in its complaint. Hargreaves argues that Deutsche Bank first had to obtain a judgment on the underlying debt, obtain a determination by the trial court as to who personally had liability under the land contract, and then, the trial court had to permit such liable defendant an opportunity to bring the arrearage current, and if that did not occur, the trial court needed to conduct a judicial sale of the Property, whereupon the proceeds would be applied to the outstanding debt, and a person like himself, claiming an interest under the land contract vendee, would be entitled to redeem the Property within six months from the sale.

Had Deutsche Bank initiated a land contract foreclosure action in the circuit court, the foreclosure statute would have applied. Deutsche Bank, however, never sought foreclosure. We are unaware of any caselaw or other authority that requires that a circuit court, upon removal of summary proceedings for possession of a forfeited land contract, must apply the judicial foreclosure statute and impose the strictures of a judicial foreclosure proceeding upon a plaintiff who elected not to go through that process. Further, in this case, the land contract vendee, Joan, stipulated that the land contract had been forfeited, gave up any possessory interest she had, and dismissed her claims against Deutsche Bank with prejudice. Deutsche Bank in turn stipulated that it would hold Joan harmless for the debt and agreed not to seek a deficiency judgment against her. Moreover, at a hearing held by the trial court, Deutsche Bank affirmed that it sought no deficiency in this action and only sought to obtain possession of the Property. Finding no Michigan law that imposes upon Deutsche Bank the obligation to judicially foreclose the forfeited land contract, or any Michigan law that provides that a summary proceeding for possession upon removal becomes an action for judicial foreclosure of a land contract, we find no merit to Hargreaves's contentions. Accordingly, the trial court did not err in this regard.

Hargreaves also contends for the first time on appeal that the summary proceedings were defective because Deutsche Bank failed to serve him with the statutory notice of forfeiture. We disagree.

MCL 600.5728 provides:

> (1) Possession may be recovered under section 5726 only after the vendee
> or person holding possession under him has been served with a written notice of

---

[3] MCR 4.201(G) specifies that a district court is not required to remove a summary proceedings case upon the filing of a counterclaim for equitable relief, but if a counterclaim exceeds the court's jurisdictional limit, the district court must remove that portion of the action to the circuit court. MCR 4.202(I)(4) provides similarly that the district court must remove that portion of the action if a money claim or counterclaim exceeds the court's jurisdictional limit.

forfeiture and has failed in the required time to pay moneys required to be paid under the contract or to cure any other material breach of the contract. Unless the parties have agreed in writing to a longer time, the person served with a notice of forfeiture shall have 15 days thereafter before he is required to pay moneys required to be paid under the contract and cure other material breaches of the contract or to deliver possession of the premises.

(2) The notice of forfeiture shall state the names of the parties to the contract and the date of its execution, give the address or legal description of the premises, specify the unpaid amount of moneys required to be paid under the contract and the dates on which payments thereof were due, specify any other material breaches of the contract and shall declare forfeiture of the contract effective in 15 days, or specified longer time, after service of the notice, unless the money required to be paid under the contract is paid and any other material breaches of the contract are cured within that time. The notice shall be dated and signed by the person entitled to possession, his attorney or agent.

MCL 600.5730 specifies that service of the notice of forfeiture may be made on the vendee *or* person holding possession under him. Both MCL 600.5728(1) and MCL 600.5730 use the disjunctive term "or," which this Court has recognized as permitting a choice between alternatives. *Ellison v Dep't of State*, 320 Mich App 169, 179; 906 NW2d 221 (2017). Thus, under the plain language of these statutory provisions, a land contract vendor may seek possession after providing the vendee notice. The record reflects that Deutsche Bank provided Joan the requisite notice in February 2018. She did not cure her material breach of the land contract which gave Deutsche Bank the right to initiate summary proceedings. Because the record indicates that Deutsche Bank properly served the notice of forfeiture on the vendees by first-class mail, Hargreaves cannot establish plain error on the basis of Deutsche Bank's failure to give him notice of the land contract forfeiture.

Hargreaves also argues that the trial court erred by entering the judgment of possession without determining the amount due under the land contract and stating the amount in the judgment as required under MCL 600.5741, and in so doing, the trial court deprived him of the right to redeem the Property from forfeiture. Hargreaves, however, failed to raise this before the trial court.

Michigan generally follows a raise or waive rule of appellate review. *Walters v Nadell*, 481 Mich 377, 387-388; 751 NW2d 431 (2008). Although the Michigan Supreme Court has held that this Court must review unpreserved errors in criminal cases for plain error affecting the defendant's rights, see *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999), it has not established a similar holding for civil cases. See *Walters*, 481 Mich at 387-388; see also *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 377-378; 761 NW2d 353 (2008) (stating that the failure to properly raise a claim of error before the trial court in a civil case normally constitutes a waiver of that claim and declining to exercise its discretion to review the unpreserved claim under the facts of that case). Nevertheless, this Court has the discretion to overlook preservation requirements. See *Smith v Foerster-Bolser Constr, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006) (stating that this Court may overlook preservation requirements where the failure to consider the issue would result in a manifest injustice, or if

consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented).  But this Court will exercise its discretion sparingly and only where exceptional circumstances warrant review. *Booth Newspapers, Inc v University of Michigan Bd of Regents*, 444 Mich 211, 234 n 23; 507 NW2d 422 (1993).  In this case, Hargreaves waived this issue for review and we decline to consider this claim of error because we do not find the existence of exceptional circumstances warranting our review.

Affirmed.

/s/ Patrick M. Meter
/s/ Karen M. Fort Hood
/s/ James Robert Redford